JOSEPH POKORNY *v.* GETTA'S GARAGE ET AL.
(8157)

O'CONNELL, FOTI and LAVERY, Js.

Argued January 11—decision released August 7, 1990

*Lawrence J. Merly,* with whom, on the brief, was *Nicholas E. Wocl,* for the appellant (plaintiff).

*Thomas A. Mulligan,* with whom, on the brief, was *Linda C. Christiani,* for the appellees (defendants).

LAVERY, J. The plaintiff, an employee-claimant, appeals from a decision of the compensation review division upholding the compensation commissioner's denial of interest on the commissioner's March 18, 1988 finding and award and upholding the commissioner's decision denying him $175,521.43 in hospital and medical expenses. We reverse the review division's decision.

The facts pertinent to this appeal are as follows. On June 7, 1979, the plaintiff, while employed as a tow truck operator, was dispatched to assist in the removal of an overturned truck on Interstate 95. The overturned truck had spilled diesel fuel, and the plaintiff inhaled fumes from the fuel. As a result, he became dizzy and was transported to Stamford Hospital. While in the hospital emergency room, he sustained a brain stem stroke secondary to basilar artery occlusion. The stroke rendered him facially paralyzed and a quadriplegic. He also permanently lost his voice. The defendant employer, Getta's Garage, and the defendant

worker's compensation insurance carrier, the American Home Insurance Company, denied coverage.

The plaintiff incurred extensive medical and hospital expenses, which were paid by the plaintiff's health insurance carrier under a group policy he had through his employer. His group health policy was cancelled on March 1, 1984; thereafter, the plaintiff had to procure his own medical insurance policy. The compensation commissioner did not hear the plaintiff's compensability claim until 1986; on September 11, 1986, the commissioner found that the plaintiff's claim was work related and compensable. The defendants were ordered to pay disability benefits at the rate of $160 per week, plus dependency and cost of living allowances retroactive to June 7, 1979, such payments to continue as long as the plaintiff remained totally disabled. The commissioner ordered the defendants to pay all of the plaintiff's medical, surgical, and hospital expenses incurred in connection with the 1979 injury. The commissioner ordered that if the parties were unable to agree on the payment for the health services, either party could request further hearings on the subject.

The commissioner also found that the defendants had not unreasonably contested liability in the claim and that there was no undue delay in either the adjustment or compensation of the claim, but rather that any delay was primarily due to the nature of the claim and the significant issues of medical causation. Accordingly, the commissioner denied the plaintiff's claims for interest and attorney's fees.

The defendants appealed the commissioner's finding of compensability to the compensation review division but never prosecuted the appeal and withdrew it prior to argument before the compensation review division. The plaintiff and the defendants were unable to agree on payment for medical services and a formal hearing

was held on February 1, 1988. On March 18, 1988, the commissioner issued his decision, in which he again denied the plaintiff's claim for interest and attorney's fees on the same grounds as in the first decision. The commissioner also found that the private medical carrier that had paid medical and hospital expenses on behalf of the plaintiff totalling $175,521.43 had not filed a lien or claim for repayment of all or any part of that sum. The commissioner, therefore, denied the plaintiff's claim for payment of that sum. The plaintiff appealed to the compensation review division from the decision of the commissioner failing to award him interest and failing to award him the $175,521.43 in medical and hospital expenses already paid by the medical insurance carrier. The compensation review division upheld the commissioner on both issues. We reverse the decision on both issues.

I

INTEREST

The commissioner based his denial of interest on his finding that the delay was due not to the fault or neglect of the defendants, but to the complexity of the medical issues. The injury took place on June 7, 1979. The hearing on compensability was in 1986 and on the remaining issues in 1988, seven and nine years after the injury.

There is no question that there was a long delay between the injury and the award. In *Balkus* v. *Terry Steam Turbine Co.*, 167 Conn. 170, 181, 355 A.2d 227 (1974), the Supreme Court expressed its opinion that three years is a disturbingly long duration between injury and award. There is no question that the delay suffered by the plaintiff called into play General Statutes § 31-300, which governs the commissioner's awarding of interest.

The commissioner did in fact consider the applicability of the statute, and we do not disturb his conclusion that the delay was not the fault of the defendants, or his denial of an interest award based upon that part of the statute. See *Balkus* v. *Terry Steam Turbine,* supra. Section 31-300 provides, however, a second basis for the award of interest to the claimant. The commissioner improperly failed to make findings or a decision under this second, relevant passage in the statute, which provides: "In cases where there has been delay in either adjustment or payment, which delay has not been due to the fault or neglect of the employer or insurer, whether such delay was caused by appeals or otherwise, the commissioner may allow interest at such rate, not to exceed six per cent per annum, as may be fair and reasonable, taking into account whatever advantage the employer or insurer, as the case may be, may have had from the use of the money, the burden of showing that the rate in such case should be less than six per cent per annum to be upon the employer or insurer."

Clearly, even without fault or negligence on the part of the defendants, there has been significant delay in adjusting and paying this claim. Although the injury had occurred on June 7, 1979, the first award was dated September 11, 1986, and the second award was dated March 18, 1988. The case is now over ten years old. When deciding a claim for interest, the commissioner cannot ignore relevant sections of the statute. In this case, the commissioner did not take into account the advantages the defendants have enjoyed from the use of the money over a nine year period. Nor did the defendants show that they earned less than 6 percent on the money they did not pay out.

The defendants' claim that the plaintiff's interest claim is res judicata is without merit because the rec-

ord does not reveal that the defendants timely asserted the doctrine. Res judicata is an affirmative defense that must be pleaded. *Nikitiuk* v. *Pishey*, 153 Conn. 545, 553, 219 A.2d 225 (1966); *Gaer Bros., Inc.* v. *Mott*, 144 Conn. 303, 310, 130 A.2d 804 (1957). It appears from the record that the defendants raise it for the first time in this court, when it should have been raised in the trial court. On remand, if the plaintiff is awarded interest it would be on the findings and awards made as a result of the February 1, 1988 hearing and not the September 18, 1986 hearing. The commissioner must exercise his discretion relative to the second provision of the statute.

## II

### MEDICAL PAYMENTS

If the defendants had not contested the plaintiff's claims, they would have been responsible for the immediate payment of the plaintiff's medical expenses. General Statutes § 31-294. When the defendants contested the plaintiff's compensation claim, however, the plaintiff's group medical insurance provider, pursuant to General Statutes § 38-174n, was obligated to pay his medical expenses. The plaintiff's private health carrier paid $175,521.43 on his behalf.

Prior to the effective date of General Statutes § 38-174n,[1] October 1, 1981, the private health carrier had no right to file a lien on workers' compensation

---

[1] General Statutes § 38-174n (c) provides: *"The lien shall arise at the time such benefits are paid or such services are rendered.* The person or entity furnishing such benefits or services shall serve written notice upon the employee, the insurance company providing workers' compensation benefits or the employer, if self-insured, and the workers' compensation commissioner for the district in which the claim for workers' compensation has been filed, setting forth the nature and extent of the lien allowable under subsection (b). *The lien shall be effective against any workers' compensation award after the notice is received."* (Emphasis added.)

awards for reimbursement for benefits or services furnished and our Supreme Court, in *Grogan* v. *New Britain,* 175 Conn. 174, 181–82, 397 A.2d 97 (1978), has concluded that, absent a statute, an employer is not entitled to a deduction or a setoff. Thereafter, however, that statute was amended to provide that any insurer that furnished benefits or services to a person suffering an injury or illness covered by workers' compensation could place a lien on the proceeds of any compensation award to the extent of benefits paid for the effects of the injury or illness arising out of and in the course of employment as a result of a controverted claim.

It is undisputed that the plaintiff's private insurance carrier has not, from October 1, 1981, until the present ever filed a lien. The plaintiff makes three arguments why the defendant has no right to withhold the payment of the $175,521.43. First, the injury took place on June 7, 1979, and the law giving the private health insurer carrier a lien was not effective until October 1, 1981, and operated prospectively, not retrospectively. Second, the defendants' obligation to pay the plaintiff's medical bills did not change in the absence of a lien. The lien is for the benefit of the private health insurance carrier and not the employer or his workers' compensation insurance carrier. Third, since no appeal was effectuated on the issue of compensability from the September 11, 1986 finding and award, and since the issue was not reopened at the February 1, 1988 hearing, the judgment of the commissioner is final and the plaintiff is entitled to have his medical bills paid by the defendants.

The defendants, on the other hand, argue that if they pay the plaintiff the costs of his medical expenses, the plaintiff would obtain a double recovery. We address these claims seriatim.

The plaintiff's first argument is correct with respect to all expenses paid prior to October 1, 1981. The health carrier's lien arises at the time such benefits are paid or such services are rendered. General Statutes § 38-174n (c). Since there was no right of lien prior to October 1, 1981, all the services paid and benefits rendered up to October 1, 1981, were not subject to lien by the private health insurance carrier. General Statutes § 31-294, on the other hand, was in effect at the time of the plaintiff's injury, and provides in pertinent part: "The employer, as soon as he has knowledge of any such injury, shall provide a competent physician or surgeon to attend the injured employee and, in addition, shall furnish such medical and surgical aid or hospital or nursing service . . . as such physician or surgeon deems reasonable or necessary." Section. 31-294 clearly places the responsibility on the employer to furnish all necessary medical and rehabilitative services, and § 31-299a precludes the employer from interposing the health insurance carrier's payments as a defense against its own liability for those expenses. The defendants are liable to the plaintiff for the payment of all of his medical and rehabilitation bills and services prior to October 1, 1981.

Second, since no lien has been filed prior to either the 1986 or 1988 findings and awards, the plaintiff is entitled to the payment of the entire $175,521.43. There is nothing in the statutes that allows the defendants to withhold payments to the plaintiff of his medical expenses except § 38-174n, the goal of which was not to benefit an employer who denied liability, but to benefit the private health insurer who assumes the responsibilities for the payment of the medical bills while the workers' compensation claim is litigated before the commissioner. The compensation review division held that the employer is mandated by the statute to pay the medical and hospital expenses even if those

expenses have been paid by a carrier other than the workers' compensation carrier. It went on, however, to say that "[l]ogic supports claimant's contention that the employer should not benefit from the private carrier's payment, but neither should the claimant enjoy unjust enrichment. Section 38-174n governs the situation. Under that statute the private insurance carrier paying the hospital expenses has a lien against the workers' compensation employer and carrier when those respondents are ultimately found to be liable for the compensable injury. If any order were to be entered against the compensation carrier for the payment of medical expenses that order would enure to the benefit of the paying private carrier. . . . The law cannot permit this claimant to enjoy a windfall, i.e., to be paid twice for his medical expenses."

This reading of §§ 31-294 and 38-174n is simply incorrect. Even if § 38-174n had been in effect at the time of the plaintiff's injury, absent a lien imposed by the health insurance carrier, the employer is still bound to pay the employee his medical expenses, regardless of any payments made by the health insurance carrier. The legislature could have provided for direct payments to the private health insurance carrier but instead provided for the mechanism of a lien as set forth in § 38-174n. The burden is on the health insurance carrier to pursue its reimbursement. The statute clearly provides that a lien is effective for the private health insurer for any award made *after* the notice is given. Section 31-299a (a) provides: "Where an employer contests the compensability of an employee's claim for compensation benefits, proof of payment made under a group health, medical or hospitalization plan or policy shall not be a defense to a claim for benefits under this chapter."

Since no lien was filed, the defendant is liable to the plaintiff for the medical expenses as provided by § 31-294. The commissioner does not have the power

to award a credit. General Statutes § 31-278; *Love* v. *J. P. Stevens & Co.*, 21 Conn. App. 9, 18, 570 A.2d 1136 (1990). Since the issue of compensability and the amounts of the plaintiff's medical and hospital expenses were not appealed, the judgment of the commission is final as to those issues. General Statutes § 31-300.

Finally, the argument advanced by the defendants, of unjust enrichment, applies as much to the defendants as to the plaintiff. The plaintiff had a contractual relationship with his private health insurance carrier. Section 38-174n provided a method for the private health insurer to be reimbursed under the workers' compensation statutes. The private insurance carrier of the plaintiff did not take advantage of the statute. Our Supreme Court, in *Skitromo* v. *Meriden Yellow Cab Co.*, 204 Conn. 485, 490, 528 A.2d 826 (1987), discussed the double recovery argument in interpreting a different section of the Workers' Compensation Act. The *Skitromo* court said, " '[a]lthough one of the purposes of § 31-293 is to avoid double recovery, it does not protect those who are less than vigilant in safeguarding their own legal rights.' " This line of reasoning was followed in *Love* v. *J. P. Stevens & Co.*, supra, and we follow it in the present case.

Since the private insurance carrier did not file a lien prior to the 1986 or 1988 findings and awards, the plaintiff must be paid in full for all of his hospital, medical and other related expenses, as set forth in § 31-294. The interpretation by the compensation review division clearly is contrary to law and to the longstanding rule that the Workers' Compensation Act be construed liberally in favor of the claimant. *Adzima* v. *UAC/Norden Division*, 177 Conn. 107, 411 A.2d 924 (1979).

The decision of the compensation review division is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion FOTI, J., concurred.

O'CONNELL, J. dissenting. I disagree in several respects with the majority's decision on the second issue.

## I

The majority misconstrues the Workers' Compensation Act as requiring an employer to pay an employee's medical expenses when, in fact, the act only requires that the employer furnish medical and surgical care. General Statutes § 31-294 provides in pertinent part that "[t]he employer, as soon as he has knowledge of any . . . injury, *shall provide* a competent physician or surgeon to attend the injured employee and, in addition, shall furnish such medical and surgical aid or hospital or nursing service, including medical rehabilitation services, as such physician or surgeon deems reasonable or necessary." (Emphasis added.) The plaintiff, therefore, has a statutory right to such surgical care for his injuries. He does not have a statutory right to be "reimbursed" for bills that he never paid nor will ever be required to pay.

The majority appears to accept the plaintiff's argument that he is entitled to double recovery under the collateral source rule of tort law. The rule provides that in personal injury cases, where an injured person sues a tortfeasor, his damages may not be reduced because his own insurance carrier has paid his medical expenses. *Roth* v. *Chatlos,* 97 Conn. 282, 288, 116 A. 332 (1922). The rationale behind this rule is that a tortfeasor should not benefit by having the damages he must pay reduced by the plaintiff's prudence in carrying insurance. *Gorham* v. *Farmington Motor Ins., Inc.,* 159 Conn. 576, 579–80, 271 A.2d 94 (1970); *Todd* v. *Malafronte,* 3 Conn. App. 16, 23, 484 A.2d 468 (1984).

Importing the collateral source rule into workers' compensation law runs counter to the theory underly-

ing workers' compensation. The rules of tort law and those of workers' compensation law are not interchangeable. " 'Work[ers'] compensation legislation established almost a complete substitute for the common law of torts, as it affected the liability of industrial employers to their employees. . . .' 1 Harper & James, Torts (1956), pp. xlii–xliii." *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 98 n.10, 491 A.2d 368 (1985). The Workers' Compensation Act compromises an employee's right to a tort action for work related injuries in exchange for relatively quick and certain compensation. "Almost every major error that can be observed in the development of compensation law, whether judicial or legislative, can be traced to the importation of tort ideas . . . ." 1 A. Larson, Workmen's Compensation Law (1990), § 1.20, pp. 2–3. Furthermore, it is ironic that the majority now brings into workers' compensation law a doctrine that has been largely abandoned in Connecticut tort law by means of legislation popularly referred to as Tort Reform I and Tort Reform II. General Statutes §§ 52-225a, 52-225b, 52-225c.

II

The majority also misinterprets the purpose of General Statutes § 38-174n. This statute grants to any provider of medical benefits or services a lien on benefits paid under the workers' compensation act; it does not affect the relationship between the employer and employee. Whether the health insurance carrier here has taken the necessary steps to protect its interest is not before us, and, accordingly, § 38-174n is irrelevant to this case.

III

While the majority is correct in saying that General Statutes § 31-299a "precludes the employer from inter-

posing the health insurance carrier's payments as a defense against its own liability for those expenses," it fails to recognize that the defendants have not presented such an argument. Instead, the defendants have acknowledged their liability for the full $175,521.43 but contend that the money is owed to the plaintiff's health insurer under § 38-174n and not to the plaintiff.

## IV

The majority improperly relies on *Skitromo* v. *Meriden Yellow Cab Co.,* 204 Conn. 485, 490, 528 A.2d 826 (1987), and *Love* v. *J. P. Stevens & Co.,* 21 Conn. App. 9, 570 A.2d 1136 (1990). Both cases are concerned with actions against third party tortfeasors and are irrelevant to the present case.

## V

In conclusion, although I recognize the firmly established principle that workers' compensation issues are to be liberally construed in favor of the employee; *English* v. *Manchester,* 175 Conn. 392, 397–98, 399 A.2d 1266 (1978); I do not find that this policy has given rise to a judicial trend favoring double recovery by the employee. Indeed, the trend seems to be in the opposite direction. See, e.g., *McGowan* v. *General Dynamics Corporation/Electric Boat Division,* 15 Conn. App. 615, 546 A.2d 893 (1988). In *McGowan,* the claimant was denied recovery under the Workers' Compensation Act when he had already been compensated for the same injuries under the Federal Long Shoremen's and Harbor Workers' Compensation Act. Id., 619; see also *Sun Ship, Inc.* v. *Pennsylvania,* 447 U.S. 715, 725 n.8, 100 S. Ct. 2432, 65 L. Ed. 2d 458 (1980).

I would hold that a claimant is entitled to reimbursement for medical expenses only if he has actually paid them, or if a third party has paid them and the claim-

ant is under a legal obligation to repay the third party. In the present case, I would allow reimbursement to the plaintiff only for those expenses incurred after his employer terminated his health insurance coverage.

Accordingly, I respectfully dissent.