JOSEPH POKORNY *v.* GETTA'S GARAGE ET AL.
(14091)

SHEA, CALLAHAN, COVELLO, BORDEN and F. X. HENNESSY, Js.

Argued March 28—decision released July 9, 1991

*Thomas A. Mulligan,* for the appellants (defendants).

*Lawrence J. Merly,* with whom, on the brief, was *Nicholas E. Wocl,* for the appellee (plaintiff).

*Douglas L. Drayton* filed a brief for the Insurance Association of Connecticut as amicus curiae.

BORDEN, J. The certified issue in this appeal is whether an employer is required to pay a workers' compensation claimant the amount of his medical bills when such bills have been covered by a medical insurance carrier who has not filed a lien pursuant to General Statutes § 38-174n.[1] We conclude that an employer is not so required.

---

[1] General Statutes § 38-174n, as amended through 1990, provides: "LIEN ON WORKERS' COMPENSATION AWARDS FOR INSURERS. NOTICE OF LIEN. (a) For purposes of this section, 'controverted claim' means any claim in which compensation is denied either in whole or in part by the workers' compensation carrier or the employer, if self-insured.

"(b) Any insurer, hospital or medical service corporation, health care center or employee welfare benefit plan which furnished benefits or services under a health insurance policy or a self-insured employee welfare benefit plan to any person suffering an injury or illness covered by the workers' compensation act has a lien on the proceeds of any award or approval of any compromise made by a workers' compensation commissioner less attorneys' fees approved by the district commissioner and reasonable costs related to the proceeding, to the extent of benefits paid or services provided for the effects of the injury or illness arising out of and in the course of employment as a result of a controverted claim, provided such plan, policy or contract provides for reduction, exclusion, or coordination of benefits of the policy or plan on account of workers' compensation benefits.

"(c) The lien shall arise at the time such benefits are paid or such services are rendered. The person or entity furnishing such benefits or services shall serve written notice upon the employee, the insurance company providing workers' compensation benefits or the employer, if self-insured, and the workers' compensation commissioner for the district in which the claim for workers' compensation has been filed, setting forth the nature and extent of the lien allowable under subsection (b). The lien shall be effective against any workers' compensation award made after the notice is received.

The plaintiff, Joseph Pokorny, suffered severe personal injuries in an action that arose out of and in the course of his employment with the named defendant, Getta's Garage (Getta). Getta and its workers' compensation insurer, the defendant American Home Assurance Company (American),[2] denied coverage for the

"(d) The written notice shall be served upon the employee at his last-known address, the insurance company at its principal place of business in this state or the employer, if self-insured, at its principal place of business, and the workers' compensation commissioner, at the district office. Service shall be made to all parties by certified or registered mail. The notice shall be in duplicate and shall contain, in addition to the information set forth in subsection (c) of this section, the name of the injured or ill employee, the name of the company providing workers' compensation benefits, the amount expended and an estimate of the amount to be expended for benefits or services provided to such injured or ill employee.

"(e) The insurance company providing workers' compensation coverage or the employer, if self-insured, shall reimburse the insurance company, hospital or medical service corporation, health care center or employee welfare benefit plan providing benefits or service directly, to the extent of any such lien. The receipt of such reimbursement by such insurer, hospital or medical service corporation, health care center or employee welfare benefit plan shall fully discharge such lien.

"(f) The validity or amount of the lien may be contested by the workers' compensation carrier, the employer, if self-insured or the employee by bringing an action in the superior court for the judicial district of Hartford-New Britain or in the judicial district in which the plaintiff resides. Such cases shall have the same privilege with respect to their assignment for trial as appeals from workers' compensation review division but shall first be claimed for the short calendar unless the court shall order the matter placed on the trial list. An appeal may be taken from the decision of the superior court to the appellate court in the same manner as is provided in section 51-197b. In any appeal in which one of the parties is not represented by counsel and in which the party taking the appeal does not claim the case for the short calendar or trial within a reasonable time after the return day, the court may of its own motion dismiss the appeal, or the party ready to proceed may move for nonsuit or default as appropriate. During the pendency of the appeal any workers' compensation benefits due shall be paid into the court in accordance with the rules relating to interpleader actions."

We note that § 38-174n has been renumbered, effective January, 1991, and now is found at General Statutes § 38a-470.

[2] We refer to Getta and American collectively as the "defendants."

The medical insurance carrier was not a party to this action and, in fact, the parties were uncertain as to its identity, although the plaintiff stated

injury, and the plaintiff's medical bills thereafter were paid by Getta's medical insurance carrier. The plaintiff filed a claim with the workers' compensation commission seeking, inter alia, to be paid the amount of his medical bills. The commissioner, and later the compensation review division (CRD), denied the plaintiff's claim because payment of that amount to the plaintiff would effect a double recovery. On appeal, the Appellate Court reversed the decision of the CRD. *Pokorny v. Getta's Garage,* 22 Conn. App. 539, 542, 579 A.2d 98 (1990). We now reverse the judgment of the Appellate Court.

The underlying facts are undisputed. On June 7, 1979, the plaintiff, who was employed by Getta[3] as a tow truck operator, went to the scene of an accident where a truck had spilled diesel fuel. While at the scene, the plaintiff inhaled diesel fumes, became dizzy, and was taken to Stamford Hospital where he suffered a brain stem stroke secondary to basilar artery occlusion. As a result of the stroke, the plaintiff is a quadriplegic, in addition to suffering facial paralysis and a perma-

at oral argument in this court that he believed it to be the Equitable Insurance Company. Therefore, throughout this opinion, we refer simply to "the medical insurance carrier."

In the absence of the medical insurance carrier, we do not decide whether, despite its failure to assert any lien rights it may have, it retains any right of reimbursement against American, the workers' compensation carrier. This record does not indicate, for example, whether the medical insurance carrier in this case had any lien rights, since General Statutes (Rev. to 1989) § 38-174a (b) (now located at § 38a-472) restricts such rights to instances where the health insurance "plan, policy or contract provides for reduction, exclusion, or coordination of benefits of the policy or plan on account of workers' compensation benefits." Thus, this case involves only the rights and obligations between the plaintiff, on the one hand, and Getta and American, on the other. It does not involve the rights and obligations, if any, between the medical insurance carrier, on the one hand, and Getta and American, on the other.

[3] The plaintiff and James O'Neill were the sole and equal shareholders, and were corporate officers, of Getta.

nent loss of voice. The defendants denied workers' compensation coverage, and the plaintiff's medical bills, totaling $175,521.43, were paid by Getta's medical insurance carrier.

In September, 1986,[4] after three days of hearings, the workers' compensation commissioner determined, inter alia, that the plaintiff's claim was compensable and ordered the defendants to "pay the claimant for all medical, surgical, [and] hospital . . . services rendered to him in connection with the injury of June 7, 1979." The commissioner also stated, however, that "[i]f the parties are unable to agree on the same, such issues may be made the subject of further hearing(s) at the request of either party." The defendants did not appeal from that decision. After the parties failed to reach an agreement concerning the medical bills, a subsequent hearing was held and a supplemental finding and order entered in March, 1988. The commissioner determined that "[t]he private medical insurance carrier which has paid medical and hospital expenses totaling $175,521.43 on behalf of the [plaintiff] has not filed herein a lien or claim for repayment of all or any part thereof, and the [plaintiff's] claim for payment to him of said sum is hereby DENIED." The plaintiff filed a motion to correct the decision,[5] which the commissioner denied.

---

[4] Both the commissioner and the CRD determined that the delay in payment of the claim was a result of the complexity of the medical issues, and not the result of fault or neglect by the defendants. The CRD affirmed the commissioner's denial of interest on the award. On appeal, the Appellate Court reversed the decision of the CRD on that issue and remanded it for further proceedings by the CRD. *Pokorny* v. *Getta's Garage*, 22 Conn. App. 539, 542–44, 579 A.2d 98 (1990). That issue is not before us, however, as part of the issue certified for appeal.

[5] In his motion to correct, the plaintiff requested, inter alia, that the commissioner find that "the claimant individually paid for the premiums for his private medical insurance carrier for an extended period of time." The commissioner denied the motion to correct, and the plaintiff did not appeal

The plaintiff appealed to the CRD. In June, 1990, the CRD concluded that the commissioner properly had denied the plaintiff's claim for payment of the amount of the medical bills because, even though the medical insurance carrier had not filed a lien pursuant to § 38-174n, such an award would amount to an impermissible double recovery or windfall for the plaintiff.[6]

The plaintiff appealed the decision of the CRD to the Appellate Court. The Appellate Court, *Lavery* and *Foti, Js.*, reversed the decision of the commissioner, with *O'Connell, J.*, dissenting. We granted certification limited to the above stated issue, and this appeal followed.

therefrom. It is axiomatic that neither this court nor the Appellate Court sits as a finder of fact. Therefore, the plaintiff's claim that he paid portions of his health insurance premiums is not a fact before this court and will not be considered, despite the plaintiff's reliance on this assertion in both this court and the Appellate Court, and despite the Appellate Court's apparent reliance thereon. See *Pokorny* v. *Getta's Garage*, 22 Conn. App. 539, 541, 579 A.2d 98 (1990). Thus, we do not decide whether such a fact would change the result or would simply require the workers' compensation carrier to reimburse the plaintiff for the cost of the premiums that he had paid. See General Statutes § 31-284b (requiring employer to maintain claimant's health insurance coverage).

[6] Specifically, the CRD stated that General Statutes § 38-174n "governs the situation. Under that statute the private insurance carrier paying the hospital expenses has a lien against that workers' compensation employer and carrier when those respondents are ultimately found to be liable for the compensable injury. If any order were to be entered against the compensation carrier for the payment of medical expenses that order would enure to the benefit of the paying private carrier.

"Although the recent decisions of the Appellate Court and the Supreme Court in *McGowan* v. *General Dynamics Corporation/Electric Boat Division*, 15 Conn. App. 615 [546 A.2d 893] (1988), aff'd per curiam, 210 Conn. 580 [556 A.2d 587] (1989), do not involve the same issue litigated here, they are nonetheless relevant. In those cases the appellate tribunals overruled this Division and construed *Sun Ship, Inc.* v. *Pennsylvania*, 447 U.S. 715, 100 S. Ct. 2432, 65 L. Ed. 2d 458, *reh'g denied*, 448 U.S. 916, 101 S. Ct. 37, 65 L. Ed. 2d 1179 (1980), to prohibit a claimant's double recovery. The rationale there enunciated applies here. The law cannot permit this claimant to enjoy a windfall, i.e., to be paid twice for his medical expenses."

The defendants claim that the Appellate Court improperly interpreted our Workers' Compensation Act in determining that they were required to pay the plaintiff the amount of his medical bills although the medical insurance carrier had paid the bills and the plaintiff is not responsible for reimbursing that carrier. Specifically, the defendants argue that General Statutes § 31-284[7] limits the plaintiff's recovery to the rights and claims provided by the Workers' Compensation Act, which abolished all traditional tort remedies. The defendants then argue that, although there is no specific statutory provision addressing the issue, a review of the relevant statutes and the workers' compensation administrative regulations demonstrates that "the issue . . . is simply one between the employer and the [medical insurance] carrier and the [plaintiff] has neither rights nor obligations concerning [the liens statutorily allowed to medical insurance carriers]." We agree with the defendants.

The Appellate Court, in reversing the decision of the CRD, based its decision on three grounds propounded by the plaintiff. The first ground was that "the injury

---

[7] General Statutes § 31-284 (a) provides: "BASIC RIGHTS AND LIABILITIES. CIVIL ACTION TO ENJOIN NONCOMPLYING EMPLOYER FROM ENTERING EMPLOYMENT CONTRACTS. (a) An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows, except that compensation shall not be paid when personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter, provided nothing herein shall prohibit any employee from securing, by agreement with his employer, additional benefits from his employer for such injury or from enforcing such agreement for additional benefits."

took place on June 7, 1979, and the law giving the private health insurance carrier a lien was not effective until October 1, 1981, and operated prospectively, not retrospectively." *Pokorny* v. *Getta's Garage,* supra, 545. The Appellate Court agreed with the plaintiff that this time sequence rendered "[t]he defendants . . . liable to the plaintiff for the payment of all his medical and rehabilitation bills and services prior to October 1, 1981." Id., 546. The second ground was that "the defendants' obligation to pay the plaintiff's medical bills did not change in the absence of a lien. The lien is for the benefit of the private health insurance carrier and not the employer or his workers' compensation insurance carrier." Id., 545. The Appellate Court agreed that, "absent a lien imposed by the health insurance carrier, the employer is still bound to pay the employee his medical expenses, regardless of any payments made by the health insurance carrier." Id., 547. The third ground was that "since no appeal was effectuated on the issue of compensability from the September, 1986 finding and award, and since the issue was not reopened at the February 1, 1988 hearing, the judgment of the commissioner is final and the plaintiff is entitled to have his medical bills paid by the defendants." Id., 545. The Appellate Court agreed that "[s]ince the issue of compensability and the amounts of the plaintiff's medical and hospital expenses were not appealed, the judgment of the commission is final as to those issues." Id., 548.

## I

We first turn to the conclusion of the Appellate Court that, because the defendant did not appeal from the September, 1986 order, the commissioner's decision ordering the defendants to pay the plaintiff the amount of the medical bills was final. Id. The defendants argue that, because the language of the commissioner's decision provided that additional hearings on the issue were

contemplated, the decision did not preclude them from challenging the payment of the medical expenses in these proceedings. We agree.

In this respect, the Appellate Court stated only that "[s]ince the issue of compensability and the amounts of the plaintiff's medical and hospital expenses were not appealed, the judgment of the commission is final as to those issues. General Statutes § 31-300."[8] Id. "The construction of a judgment is a question of law for the court." *Lashgari* v. *Lashgari,* 197 Conn. 189, 196, 496 A.2d 491 (1985). "As a general rule, judgments are to be construed in the same fashion as other written instruments." Id. The same principles apply to an award of a workers' compensation commissioner. Therefore, the September, 1986 decision must be construed "as a whole, with all relevant provisions considered together." *Beckenstein* v. *Potter & Carrier, Inc.,* 191 Conn. 120, 134, 464 A.2d 6 (1983).

It is true that the commissioner's decision provided that "[t]he respondents are further ordered to pay the claimant for all medical, surgical, [and] hospital . . . services rendered to him in connection with the injury of June 7, 1979." It also provided, however, in the next sentence, that "[i]f the parties are unable to agree on the same, such issues may be made the subject of further hearing(s) at the request of either party." (Emphasis

---

[8] General Statutes § 31-300 provides in pertinent part: "AWARD AS JUDGMENT. INTEREST. ATTORNEY'S FEE. PROCEDURE ON DISCONTINUANCE OR REDUCTION. As soon as may be after the conclusion of any hearing, but no later than one hundred twenty days after such conclusion, the commissioner shall send to each party a written copy of his award. The commissioner shall, as part of the written award, inform the employee or his dependent, as the case may be, of any rights the individual may have to an annual cost-of-living adjustment or to participate in a rehabilitation program under the provisions of this chapter. He shall retain the original award in his office. If no appeal from his decision is taken by either party within ten days thereafter, such award shall be final and may be enforced in the same manner as a judgment of the superior court."

added.) Reading the decision in its entirety, we conclude that either party had the right to petition for additional hearings on the issue of the defendants' obligation to pay for the plaintiff's medical bills, and that the defendants were not limited to appealing the decision concerning payment of the medical bills within the statutory time limitation provided in § 31-300. We conclude, therefore, that the Appellate Court was incorrect, as a matter of law, in its construction of the decision of the commissioner.

## II

We next consider together the Appellate Court's conclusion that the plaintiff was entitled to prevail because (1) his injury took place before the effective date of § 38-174n, and (2) the defendants' obligation to pay the plaintiff the amount of his medical bills did not change in the absence of a lien having been asserted by the medical insurance carrier. The defendants argue that the Appellate Court improperly construed the Workers' Compensation Act as requiring payment to the plaintiff of the amount of his medical expenses, previously paid by his medical insurance carrier, which he will never be required to repay. The defendants argue that the Workers' Compensation Act does not provide for such a payment, and to require such a payment would result in an impermissible double recovery. We agree.

In reversing the decision of the CRD, the Appellate Court based its decision upon its construction of the Workers' Compensation Act,[9] in particular General

---

[9] We note that at oral argument the plaintiff refined his argument on this issue. The plaintiff asserted that "this case turns on three statutes. The three statutes are [General Statutes §] 31-294, [General Statutes §] 31-284 . . . and [General Statutes §] 31-299a (a). . . . It [is] not a general principle we are dealing with here. We [are] dealing with statutory construction."

Statutes §§ 31-294 and 31-299a, and also of § 38-174n.[10]
Section 31-294 requires, in pertinent part, an employer
to provide necessary and reasonable medical and sur-

The plaintiff also argued that "[t]he courts in the United States who have
addressed the issue, some have said it's a collateral source rule, other have
said it's a rule akin to the collateral source rule. I'm saying to you and I
think the Appellate Court said to you . . . that it's a case of statutory
construction in Connecticut." In light of these assertions, we regard as aban-
doned the plaintiff's claim that the collateral source rule is applicable to
claims based upon our Workers' Compensation Act. See *Rostain* v. *Ros-
tain,* 214 Conn. 713, 714 n.1, 573 A.2d 710 (1990).

[10] General Statutes § 31-294 provides: "NOTICE OF INJURY AND OF CLAIM
FOR COMPENSATION. (a) Any employee who has sustained an injury in the
course of his employment shall forthwith notify his employer, or some per-
son representing his employer, of such injury; and on his failure to give
such notice, the commissioner may reduce the award of compensation
proportionately to any prejudice which he finds the employer has sustained
by reason of such failure; but the burden of proof with respect to such prej-
udice shall rest upon the employer. No proceedings for compensation under
the provisions of this chapter shall be maintained unless a written notice
of claim for compensation is given within one year from the date of the
accident or within three years from the first manifestation of a symptom
of the occupational disease, as the case may be, which caused the personal
injury, provided, if death has resulted within two years from the date of
the accident or first manifestation of a symptom of the occupational dis-
ease, a dependent or dependents, or the legal representative of the deceased
employee, may make claim for compensation within such two-year period
or within one year from the date of death, whichever is later. Such notice
may be given to the employer or any commissioner and shall state, in sim-
ple language, the date and place of the accident and the nature of the injury
resulting therefrom, or the date of the first manifestation of a symptom
of the occupational disease and the nature of such disease, as the case may
be, and the name and address of the employee and of the person in whose
interest compensation is claimed. An employee of the state shall send a
copy of such notice to the commissioner of administrative services.

"(b) If there has been a hearing or a written request for a hearing or an
assignment for a hearing within said one-year period from the date of the
accident or within said three-year period from the first manifestation of
a symptom of the occupational disease, as defined herein as the case may
be, or if a voluntary agreement has been submitted within the applicable
period, or if within the applicable period an employee has been furnished,
for the injury with respect to which compensation is claimed, with medical
or surgical care as hereafter provided in this section, no want of such notice
of claim shall be a bar to the maintenance of proceedings and in no case

gical care to an injured employee. Section 31-299a provides, in pertinent part, that when an employer contests the compensability of an employee's claim for benefits,

shall any defect or inaccuracy of such notice of claim be a bar to the maintenance of proceedings unless the employer shows that he was ignorant of the facts concerning such personal injury and was prejudiced by the defect or inaccuracy of such notice. Upon satisfactory showing of such ignorance and prejudice, the employer shall receive allowance to the extent of such prejudice. Within one week after receipt by an employer of such notice of claim for compensation, he shall report the substantial facts of such notice to the commissioner. For the purposes of this section, 'manifestation of a symptom' means its manifestation to the employee claiming compensation, or to some other person standing in such relation to him that the knowledge of such a person would be imputed to him, in such manner as is or ought to be recognized by him as symptomatic of the occupational disease for which compensation is claimed.

"(c) The employer, as soon as he has knowledge of any such injury, shall provide a competent physician or surgeon to attend the injured employee and, in addition, shall furnish such medical and surgical aid or hospital or nursing service, including medical rehabilitation services, as such physician or surgeon deems reasonable or necessary. Such physician or surgeon shall be selected by the employee from an approved list of physicians and surgeons prepared by the commissioners, but, if such employee is unable to make the selection, the employer shall do so, subject to ratification by the employee or his next of kin, provided, however, where the employer has a full-time staff physician or a physician is available on call, the initial treatment required immediately following the injury may be rendered by such physician, but the employee may thereafter select his own physician as provided by this chapter for any further treatment without prior approval of the commissioner. In the event of the failure of the employer promptly to provide such physician or surgeon or such medical, surgical or hospital or nursing service, the injured employee may provide such physician or surgeon, selected from the approved list prepared by the commissioners, or such medical, surgical or hospital or nursing service at the expense of the employer; or, at his option, the injured employee may refuse the medical, surgical and hospital or nursing service provided by his employer and provide the same at his own expense. The commissioner may, without hearing, at the request of the employer or the injured employee, when good reason exists, or on his own motion, authorize or direct a change of such physician or surgeon or such hospital or nursing service. If it appears to the commissioner that an injured employee has refused to accept and failed to provide such reasonable medical, surgical or hospital or nursing service, all rights of compensation under the provisions of this chapter shall be suspended during such refusal and failure. The pecuniary liability of the

it may not rely upon payments of the employee's medical bills by a group health, medical or hospitalization plan as a defense, and that a medical insurance carrier may not refuse to pay for treatment by claiming

employer for the medical and surgical service herein required shall be limited to such charges as prevail in the same community or similar communities for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person; but the liability of the employer for hospital service shall be the amount it actually costs the hospital to render the service, such amount to be determined by the commissioner except in the case of state humane institutions, liability of the employer shall be the per capita cost as determined by the comptroller under the provisions of section 17-295. All disputes concerning liability for hospital services in workers' compensation cases shall be settled by the workers' compensation commissioner in accordance with this chapter. In the case of a seaman employed upon any enrolled vessel of the United States and entitled, by the provisions of any law of the United States, to medical or surgical aid or hospital or nursing service without charge, such medical or surgical aid or hospital or nursing service may be substituted for that provided for in this section so far as it may answer the requirements of the provisions of this section, but nothing herein shall excuse the employer in such cases from giving emergency treatment when required; and any employer desiring to take advantage of this provision shall ascertain that such services as are provided for by the laws of the United States are rendered. All medical reports concerning any injury of an employee sustained in the course of his employment shall be furnished within thirty days after the completion of such reports, at the same time and in the same manner, to the employer and the employee or his attorney. 'Nursing', as used herein, means the practice of nursing as defined in subsection (a) of section 20-87a, and 'nurse' means a person engaged in such practice. 'Medical and surgical aid or hospital and nursing service', for the purposes of this chapter, shall, when so requested by the injured employee and approved by the commissioner, include treatment by prayer or spiritual means through the application or use of the principles, tenets or teachings of any established church without the use of any drug or material remedy, provided sanitary and quarantine regulations are complied with, and provided all those ministering to the injured employee are bona fide members of such church. Such employee shall submit to all physical examinations as required by this chapter."

General Statutes § 31-299a provides: "PAYMENTS UNDER GROUP MEDICAL POLICY NOT DEFENSE TO CLAIM FOR BENEFITS. HEALTH INSURER'S DUTY TO PAY. LIEN. (a) Where an employer contests the compensability of an employee's claim for compensation benefits, proof of payment made

that the injury is the responsibility of the workers' compensation carrier. Section 38-174n provides, in pertinent part, that a health insurance carrier that has furnished benefits or services to an injured employee covered by workers' compensation has a lien on the proceeds of any workers' compensation award made by the commissioner.

The Appellate Court, in construing these statutes, concluded that, because § 38-174n was enacted in 1981, subsequent to the plaintiff's injury, it did not provide the health insurance carrier with a statutory lien in this case. *Pokorny* v. *Getta's Garage,* supra, 546. It further held that "[s]ection 31-294 clearly places the responsibility on the employer to furnish all necessary medical and rehabilitative services, and § 31-299a precludes the employer from interposing the health insurance carrier's payments as a defense against its own liability for those expenses." Id. The court continued, stating that "[t]here is nothing in the statutes that allows the defendants to withhold payments to the plaintiff of his medical expenses except § 38-174n, the goal of which was not to benefit an employer who denied liability, but to benefit the private health insurer who assumes the responsibilities for the payment of the medical bills

under a group health, medical or hospitalization plan or policy shall not be a defense to a claim for benefits under this chapter.

"(b) Where an employer contests the compensability of an employee's claim for compensation benefits, and the employee has also filed a claim for benefits or services under the employer's group health, medical, disability or hospitalization plan or policy, the employer's health insurer may not delay or deny payment of benefits due to the employee under the terms of the plan or policy by claiming that treatment for the employee's injury or disease is the responsibility of the employer's workers' compensation insurer. The health insurer shall have a lien on the proceeds of any award or approval of any compromise made by the commissioner pursuant to the employee's workers' compensation claim, in accordance with the provisions of section 38a-470."

See footnote 1, supra, for full text of General Statutes § 38-174n.

while the workers' compensation claim is litigated before the commission." Id.

In sum, the Appellate Court concluded that, in the absence of a lien by a medical insurance carrier, an employer is required to pay to an injured employee the amount of his medical bills, regardless of whether the bills had been paid in full by the employer's group medical insurance carrier and regardless of the fact that the employee would never be required to repay the amount of those bills to the medical insurance carrier.[11] We disagree with this interpretation of our Workers' Compensation Act.

The construction of a statute generally is a question of law for the court. See *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). In reviewing the Appellate Court's interpretation of the Workers' Compensation Act, we must determine whether such interpretation is legally and logically correct. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

This appeal highlights the tension between two fundamental legal principles upon which our Workers' Compensation Act is based. Those principles are, first, that "all workers' compensation legislation, because of its remedial nature, should be broadly construed in favor of disabled employees"; see *Szudora* v. *Fairfield,* 214 Conn. 552, 557, 573 A.2d 1 (1990); *Mingachos* v.

---

[11] Although the plaintiff asserted at oral argument that the medical insurance carrier could sue the plaintiff pursuant to a private contract, he failed to provide any authority for his assertion that a group medical carrier may sue the employee, its own insured, for repayment of medical bills based upon a subsequent workers' compensation award. There is absolutely no indication in this record of any such potential liability of the plaintiff, and we know of no authority supporting such liability.

*CBS, Inc.,* 196 Conn. 91, 97, 491 A.2d 368 (1985); and, second, that our Workers' Compensation Act prohibits double recovery. See *Gurliacci* v. *Mayer,* 218 Conn. 531, 570, 590 A.2d 914 (1991); *Enquist* v. *General Datacom,* 218 Conn. 19, 26, 587 A.2d 1029 (1991); *Paternostro* v. *Edward Coon Co.,* 217 Conn. 42, 49, 583 A.2d 1293 (1991). We conclude that the Appellate Court improperly construed the act so as to disregard the important public policy prohibiting double recovery.[12] Specifically, the court, in contravention of General Statutes § 31-284, improperly afforded the plaintiff a right not provided by our act, thereby placing him in the position of a beneficiary of a medical insurance carrier's right to be reimbursed for medical bills that it had paid, resulting in an impermissible double recovery.

The Workers' Compensation Act is a contractual remedy that "compromise[s] an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." *Mingachos* v. *CBS, Inc.,* supra, 97. Indeed, General

[12] The dissent ignores the fact that we do not deny the medical insurance carrier the opportunity to assert its rights, if any. See footnote 2, supra. It is certainly curious, however, that, at least since 1979, when the plaintiff was first hospitalized and the medical carrier presumably first paid his bills, it has not asserted any such rights, either under the Workers' Compensation Act or under the principles of restitution cited by the dissent. It is difficult to see, therefore, why *these* parties must await a resolution of their rights to accommodate a medical insurance carrier that may have none or, if it does, has failed to assert them for up to twelve years.

The dissent would require the commissioner to have cited in the medical insurance carrier. The only question before the commissioner, however, was whether the plaintiff, who made the claim for payment in this case, was entitled to be paid the amount of the medical bills from his employer; it was not whether the medical insurance carrier was so entitled. We see nothing in the Workers' Compensation Act, nor has the dissent pointed to anything therein, that required the commissioner to cite in the medical insurance carrier under these circumstances. The only "grotesquerie" here, therefore, is the dissent's analogy of these litigants, who have asserted and defended their respective positions in good faith, to "two thieves."

Statutes § 31-284 (a) provides that "[a]n employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . but an employer shall secure compensation for his employees . . . . All rights and claims between employer and employees . . . arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than the rights and claims given by this chapter . . . ." "General Statutes § 31-284 . . . makes [workers'] compensation benefits an employee's sole remedy against an employer for personal injuries . . . ." *Velardi* v. *Ryder Truck Rental, Inc.*, 178 Conn. 371, 375, 423 A.2d 77 (1979). Therefore, we must examine the chapter to determine whether the legislature intended an employee to recover the amount of his medical bills from the employer, when the employee's medical bills were covered by his employer's group medical insurance carrier and the employee will never be required to repay the carrier for such bills.

General Statues § 31-294 (c) states in pertinent part that "[t]he employer . . . shall provide a competent physician or surgeon to attend the injured employee and, in addition, shall furnish such medical and surgical aid or hospital or nursing service, including medical rehabilitation services, as such physician or surgeon deems reasonable or necessary." In interpreting statutes, we do not ordinarily read into the provisions that which does not find expression in their words. See *Kyrtatas* v. *Stop & Shop, Inc.*, 205 Conn. 694, 702, 535 A.2d 357 (1988). The language of § 31-294 (c) requires an employer to provide medical care to the injured employee. This language does not support an interpretation requiring the employer to pay to the employee the cost of such medical care when the employee has not been burdened by that cost. The statute does not

speak in terms of payment to the employee of the medical expenses incurred, but rather is limited to providing that the employee will receive necessary medical care at the expense of the employer, thereby establishing a direct relationship between, on the one hand, the employer and its workers' compensation carrier, and, on the other hand, the medical care provider.

Our determination that § 31-294 establishes a direct relationship between the employer and its compensation carrier, and the medical care provider, to the exclusion of the employee, is supported by Professor Larson, who states that "[t]he normal rule is that the obligation to pay medical bills *runs from the employer to the physician or hospital.* It follows that a hospital or doctor may not collect fees from the employee over and above the amount paid by the employer. Nor may such claims be pressed against the employee while the compensation proceedings are in progress . . . ." (Emphasis added.) 2 A. Larson, Workmen's Compensation Law § 61.12k, p. 10-846. Additionally, one Connecticut commentator states that § 31-294 "clearly places responsibility on the employer *to furnish all necessary medical and rehabilitative services.* By statute, this includes not only the furnishing of a physician to attend the injured employee, but also whatever medical treatment or diagnostic procedures such physician deems reasonable or necessary. Thus, the employer is responsible not only for the initial treating physician, but also for any other physician, hospital, diagnostic or treatment center to which such treating physician refers the claimant." (Emphasis added.) J. Asselin, Connecticut Workers' Compensation Practice Manual (1985) p. 178.

This discussion buttresses our conclusion that the legislature did not intend for an employee to receive the amount of his medical bills in addition to the health care itself. In this case, the plaintiff has received the

care anticipated by § 31-294, albeit at the expense of the medical insurance carrier. He has received all that was anticipated by the act, and any issue regarding Getta's and American's obligations to pay for those bills lies between them and the medical insurance carrier.

A review of the administrative regulations and other statutory sections lends further support to our determination that it was the intent of the legislature to remove the employee completely from any responsibility for payment of medical expenses, in order to ensure that the employee receives "quick and certain compensation"; *Mingachos* v. *CBS, Inc.,* supra; including medical treatment, in exchange for compromising his right to sue his employer in tort. Pursuant to General Statutes § 31-279,[13] in 1973 the commission adopted regulation § 31-279-9 (e), which provides that "[a]ll charges for medical, surgical, hospital and nursing services, except those for expert testimony, shall

---

[13] General Statutes § 31-279 provides: "ADOPTION OF RULES AND MAKING OF REPORTS BY THE BOARD. APPROVAL OF LIST OF PHYSICIANS, SURGEONS, PODIATRISTS AND DENTISTS. UNIFORM SYSTEM FOR DETERMINATION OF DEGREE OF PHYSICAL IMPAIRMENT. Acting together, the commissioners shall have power to adopt and change such rules, methods of procedure and forms as they deem expedient for the purposes of this chapter. Said commissioners shall maintain an approved list of practicing physicians, surgeons, podiatrists and dentists from which an injured employee shall choose for examination and treatment under the provisions of this chapter. The commissioner shall have the authority to establish classifications of approved physicians by specialty, to establish fees for services to be rendered and to remove physicians, dentists, and podiatrists from the approved list for cause and shall consult with the appropriate medical, dental or other professional group concerning establishment of standards for approval and removal of physicians, dentists and podiatrists from the approved list. Said commissioners shall, not later than July 1, 1991, adopt regulations to create a uniform ststem to be used by medical professionals in determining the degree of physical impairment of persons receiving benefits under this chapter. Annually, as provided in section 4-60, the commissioner shall prepare and submit to the governor a report of their doings, including such recommendations as they think advisable for the improvement of the provisions of this chapter."

be solely the responsibility of the employer or carrier, and no claim will be made against the injured employee for all or part of the fees." Therefore, under our Workers' Compensation Act the employee is relieved of any responsibility for his medical bills from the outset, leaving the employer and the provider of the medical care as the sole interested parties in any dispute concerning medical bills.

In addition, General Statutes § 38-174n, which permits certain medical insurance carriers that pay the medical expenses of the employee to assert a lien on the workers' compensation award, provides that the workers' compensation carrier *"shall reimburse the . . . [medical insurance carrier] providing benefits or service directly, to the extent of any such lien."* (Emphasis added.) General Statutes § 31-299a provides that where an employer contests liability for a workers' compensation claim, the employer's health insurance carrier may not delay or deny payment of the employee's medical bills. No indication that the employee has a right under § 31-284 to the amount of the services can be gleaned from these sections. The language of §§ 38-174n and 31-299a mandating direct payment by the employer or its carrier to the medical provider, without mention of the employee, indicates that the intent of the legislature was to remove the employee completely from the arena of battle over payment of medical expenses.

We find no merit in the plaintiff's argument that these statutes are inapplicable because they were enacted subsequent to his injury. Sections 38-174n and 31-299a provide assistance in construing the legislative intent behind § 31-294, namely, that the payment of medical expenses involves the rights and obligations of only the employer, its workers' compensation carrier and the medical care provider. These statutes also

are consistent with the workers' compensation regulation; Regs., Conn. State Agencies § 31-279-9 (e); that was in effect at the time of the plaintiff's injury.

This conclusion undermines the Appellate Court's determination that the plaintiff was entitled to payment of the amount of his medical bills because the medical insurance carrier failed to assert its lien rights. The Appellate Court's decision evidences a construction of the act so partial to the employee that it violates our strong public policy prohibiting double recovery. See *Gurliacci* v. *Mayer*, supra; *Enquist* v. *General Datacom*, supra; *Paternostro* v. *Edward Coon Co.*, supra; see also J. Asselin, supra, p. 272.

In the Appellate Court, the defendants argued that the plaintiff would be unjustly enriched by the recognition of his claim. In addressing that argument, the Appellate Court stated that the "unjust enrichment [argument], applies as much to the defendants as to the plaintiff." *Pokorny* v. *Getta's Garage*, supra, 548. The court stated that the plaintiff had a contractual relationship with the health insurance carrier, and that this carrier had a statutory right to be reimbursed, of which it did not take advantage. Therefore, the court, relying on *Skitromo* v. *Meriden Yellow Cab Co.*, 204 Conn. 485, 490, 528 A.2d 826 (1987), concluded, in essence, that where the medical insurance carrier "sits on its rights" for reimbursement, such rights devolve to the injured employee as a permissible double recovery because the employer is by statute obligated to pay the employee's medical bills.

The Appellate Court's analysis, however, demonstrates a fundamental misconstruction of the Workers' Compensation Act because it assumes that the employee somehow becomes the beneficiary of the medical insurance carrier's failure to assert its lien rights,

despite the lack of any indication in the act of such a right. We already have determined that the intent of the legislature was to remove the employee from any involvement with payment of medical expenses. Although the Appellate Court did not point to any specific provision in support of its conclusion that the plaintiff had a statutory right to a double recovery, the plaintiff claimed at oral argument in this court that § 31-284 provides such authority.

In particular, the plaintiff relies on the language of § 31-284 (a) that "nothing herein shall prohibit any employee from securing, by agreement with his employer, additional benefits from his employer for such injury or from enforcing such agreement for additional benefits." The plaintiff claims that this language, together with §§ 31-294 and 31-299a,[14] supports the Appellate Court's decision allowing the plaintiff double recovery.[15] This argument cannot withstand scru-

[14] We note that the legislative history of General Statutes § 31-299a indicates that no double recovery was intended, thereby weakening the plaintiff's reliance upon this section. Senator Frederick Knous stated that the bill was "intended to facilitate early payment of insurance benefits to injured persons while at the same time *preventing duplicate recoveries.*" (Emphasis added.) 24 S. Proc., Pt. 4, 1981 Sess., p. 1248.

[15] In support of his position that he should be awarded the amount of his medical bills despite the aspect of double recovery, the plaintiff cites the following cases: *Shelby Mfg. Co.* v. *Harris,* 112 Ind. App. 627, 44 N.E.2d 315 (1942); *Byant* v. *New Orleans Public Service Inc.,* 406 So. 2d 767 (La. App. 1981); *Bowen* v. *Magic Mart of Cornith,* 441 So. 2d 548 (Miss. 1983); *Homan* v. *American Can Co.,* 535 S.W.2d 574 (Mo. 1976); *Wiedower* v. *ACF Industries, Inc.,* 657 S.W.2d 71 (Mo. App. 1983); *Humphrey* v. *Workers' Compensation Appeals Board,* 100 Pa. Commw. 33, 514 A.2d 246 (1986); *Standard Fire Ins. Co.* v. *Ratcliff,* 537 S.W.2d 355 (Tex. Civ. App. 1976); *Anderson* v. *Industrial Commission,* 108 Utah 52, 157 P.2d 253 (1945); but see *Johnson Transportation Co.* v. *Dunkle,* 19 Del. 2322, 541 A.2d 551 (1988); *Shepard* v. *Midland Foods, Inc.,* 219 Mont. 124, 710 P.2d 1355 (1985); *Workmen's Appeal Board* v. *Olivetti Corporation of America,* 26 Pa. Commw. 464, 364 A.2d 735 (1976). We note, however, the limited weight that we attribute to cases from other jurisdictions. "Cases from other jurisdictions . . . are of limited assistance, because the courts are construing the terms

tiny because the plaintiff has failed to show that an agreement existed between him and the defendants whereby he would be entitled to recover the amount of the payments made by the medical insurance carrier should that carrier fail to exercise its right to recoup.

Similarly, the Appellate Court's reliance on our decision in *Skitromo* v. *Meriden Yellow Cab Co.*, supra, is misplaced. In *Skitromo,* the issue was whether an employer, who sought to credit against future compensation liability the amount that the employee recovered in a third party action where the employer had failed to intervene in a timely manner pursuant to General Statutes § 31-293, forfeited his statutory right for reimbursement. That case stands for the proposition that an "employer's failure to intervene . . . deprived it of any interest in the employee's third party recovery, and . . . the employer, therefore, is not entitled to credit that recovery against its future workers' com-

---

of their own Acts which generally differ materially from our Act." *Esposito* v. *Marlin-Rockwell Corporation,* 96 Conn. 414, 419, 114 A. 92 (1921); see also *Whalen* v. *New Haven Pulp & Board Co.,* 127 Conn. 394, 397, 17 A.2d 145 (1940).

The plaintiff has also cited, however, a decision of Connecticut's CRD that he contends controls this appeal, namely, *LaPrade* v. *Robbins,* 4 Conn. Workers' Comp. Rev. Op., p. 100, Case No. 595 C.R.D. 7-87 (June 12, 1987). In *LaPrade,* the CRD held that "[w]ith respect to the claimant's appeal, it is clear that our statute does not permit the employer or his carrier to benefit from other insurance available to pay claimant's medical bills. Therefore, we remand to the Commissioner to order the employer to pay all medical expenses resulting from the injury." The CRD, in its decision in the instant appeal, interpreted its decision in *LaPrade* as meaning that "the respondent carrier had to pay those expenses, [but] it did not hold that they had to be paid to the claimant. Logic supports claimant's contention that the employer should not benefit from the private carrier's payment, but neither should [the] claimant enjoy unjust enrichment."

We need not determine whether the CRD clarified or overruled its earlier decision in *LaPrade.* The determination of a legal issue of first impression by the CRD is not binding on this court.

pensation liability." Id., 486. Thus, the employee was permitted to insulate himself from his employer's untimely claim for reimbursement out of his third party recovery.

In this case, the issue is not the employer's entitlement to the proceeds of a third party recovery but the employee's right to recover from his employer for medical bills paid by the employer's medical insurance carrier.[16] Neither *Skitromo's* result nor its reasoning controls this case.

It is true, as the plaintiff suggests, that in this case American is "enriched" by not having to pay the amount of the medical bills that the medical insurance carrier paid. We cannot say, however, that the enrichment is "unjust." Unjust enrichment results when " 'it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff.' " *National CSS, Inc.* v. *Stamford,* 195 Conn. 587, 597, 489 A.2d 1034 (1985), quoting *Schleicher* v. *Schleicher,* 120 Conn. 528, 534, 182 A.2d 162 (1935). American is no more "unjustly" enriched here than in any other case where one who purportedly owes money to another is permitted to retain the money because the creditor fails to assert its rights in a timely manner. Moreover, to the extent that the defendants are enriched, such an outcome is the result of the presumed laxity of the medical insurance carrier. The plaintiff's claim to payment of the amount of the medical bills would interject into the

---

[16] The Appellate Court, in its decision concerning the issue of double recovery, relied on *Love* v. *J. P. Stevens & Co.,* 21 Conn. App. 9, 570 A.2d 1136 (1990), and the application therein of *Skitromo* v. *Meriden Yellow Cab Co.,* 204 Conn. 485, 528 A.2d 826 (1987). We note that *Love* v. *J. P. Stevens & Co.,* supra, was reversed by this court while this appeal was pending; 218 Conn. 46, 587 A.2d 1042 (1991); and the Appellate Court's reliance thereon no longer supports its decision.

Workers' Compensation Act "default" rights to the plaintiff, thereby allowing him to step into the shoes of the medical insurance carrier. Such a result was not intended by the legislature.

The judgment is reversed and the case is remanded to the Appellate Court with direction to affirm the decision of the compensation review division.

In this opinion CALLAHAN, COVELLO and F. X. HENNESSY, Js., concurred.

SHEA, J., dissenting. In reversing the Appellate Court the majority relies primarily on the "important public policy prohibiting double recovery," but completely overlooks the important public policy of preventing unmerited windfalls at the expense of others. See *Gorham* v. *Farmington Motor Inn, Inc.*, 159 Conn. 576, 580, 271 A.2d 94 (1970). As the opinion recognizes, General Statutes § 38-174n provides for a lien by a medical insurer that has furnished benefits to an insured who has suffered an injury covered by the Workers' Compensation Act upon any award to such an employee. It also requires the workers' compensation carrier to reimburse the medical insurer to the extent of such lien, "provided such plan, policy or contract provides for reduction, exclusion, or coordination of benefits of the policy or plan on account of workers' compensation benefits."[1] Although the record does not indicate that any such lien has been filed by the medical insurer that has paid the plaintiff's bills of $175,521.43, the statute does not specify when such a lien must be filed. Apart from § 38-174n, an insurer that has paid the medical expenses of an injured employee pursuant to its insurance contract may well be entitled

---

[1] The record does not indicate whether the plaintiff's medical insurance policy contained a provision relating to workers' compensation.

to indemnity against the primary obligor, the workers' compensation carrier. Restatement, Restitution § 76.[2]

Because the insurer that has paid the plaintiff's medical expenses has an interest in this litigation "of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such condition that its final termination may be wholly inconsistent with equity and good conscience"; *Shields* v. *Barrow,* 58 U.S. (17 How.) 130, 139, 15 L. Ed. 158 (1855); we should remand the case to the trial court for joinder of that insurer as a necessary party.[3] "The necessary party rules originated in equity and expressed the principle that a court of equity, once it undertook a case, would not do justice 'by halves but would seek to clean up the whole controversy.'" F. James & G. Hazard, Civil Procedure § 10.11. In proceeding to adjudicate the plaintiff's claim for medical expenses without notice to the insurer that paid them, in disregard of its right to reimbursement, we violate these principles by leaving the controversy in such a condition that either another suit to determine the

---

[2] The Restatement of Restitution § 76 provides: "A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct."

[3] The quotation from *Shields* v. *Barrow,* 58 U.S. (17 How.) 130, 139, 15 L. Ed. 158 (1855), refers to "indispensable parties," not merely "necessary parties." The latter are defined as "[p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." Id. Despite the overlap in the two definitions, the medical insurer is more properly characterized as a necessary rather than an indispensable party at this point of the proceeding in this case because its rights are not affected by the determination reached by the majority, which rejects the claim of the employee. If the employee had prevailed, the medical insurer might well have been an indispensable party since the fund to which its lien relates might have disappeared.

medical insurer's claim must be brought or the defendant workers' compensation carrier will receive an undeserved windfall.

It is inconceivable that a court should attempt to decide a dispute between two thieves over property in the possession of one of them belonging to an owner whose identity is known or ascertainable without notifying him and providing an opportunity for assertion of his rights. That grotesquerie is not so far removed from the present case, in which the workers' compensation commissioner, without notice to the medical insurer, undertook to resolve claims to the sum representing the medical expenses by one party, who seeks to recover expenses he has never incurred, and by another, which asserts entitlement to a windfall resulting from the failure of the medical insurer thus far to file a statutory lien or otherwise pursue its right of reimbursement. This court ought not to be restricted to such distasteful choices when the alternative of requiring joinder of the medical insurer is available for a complete resolution of the controversy.

Accordingly, I dissent.