CHARLES McGOWAN *v.* GENERAL DYNAMICS
CORPORATION/ELECTRIC BOAT
DIVISION ET AL.
(5910)

SEBASTIAN SEMATARO *v.* GENERAL DYNAMICS
CORPORATION/ELECTRIC BOAT
DIVISION ET AL.
(5913)

DUPONT, C. J., BORDEN and FOTI, Js.

Argued March 3—decision released August 23, 1988

*Lucas D. Strunk,* with whom, on the brief, was *James L. Pomeranz,* for the appellants (defendants in both cases).

*Stephen C. Embry,* filed a brief for the appellee (Charles McGowan, plaintiff in the first case).

*Carolyn P. Kelly,* for the appellee (Sebastian Semataro, plaintiff in the second case).

DUPONT, C. J. The single question presented in this combined appeal is whether an award received pur-

suant to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 through 950 (1986), is to be wholly credited against a subsequent award arising out of the same injury under the Connecticut Workers' Compensation Act, General Statutes §§ 31-275 through 31-355a. We hold that the award under the LHWCA must be so credited.

The plaintiffs, Charles McGowan and Sebastian Semataro, sustained injuries during the course of their employment with the named defendant, the Electric Boat Division of the General Dynamics Corporation.[1] Both plaintiffs filed claims pursuant to the LHWCA for the injuries suffered and were awarded compensation benefits under that federal act. The plaintiff McGowan received a total award of $41,006.76, comprised of $20,378.50 in temporary total disability benefits, $9792.82 in permanent partial disability benefits, a $10,000 lump sum settlement and an overpayment of $835.45. The plaintiff Semataro received a total award of $56,994.06, comprised of $29,805.42 in temporary total disability benefits and $27,188.64 in permanent partial disability benefits.

The plaintiffs subsequently filed claims under the Connecticut Workers' Compensation Act based on the same injuries for which compensation had been awarded under the LHWCA. The parties stipulated as to each plaintiff that Connecticut had jurisdiction to hear the claims, that compensable injuries had been suffered, and that compensation benefits had been awarded under the LHWCA. It was further stipulated that the total award to which McGowan was eligible under the Connecticut Workers' Compensation Act was $33,932.49, comprised of $30,492.39 in temporary total disability benefits and permanent partial disability benefits, and

---

[1] Aetna Life and Casualty, the insurer of the named defendant, is also a defendant in these appeals.

$3440.10 for permanent scarring.[2] It was also stipulated that Semataro was eligible under the Connecticut act for a total award of $46,723.95, comprised of $43,489.95 in temporary total disability benefits and permanent partial disability benefits, and $3234 for scarring pursuant to General Statutes § 31-308 (d). Thus, the total benefits awarded each plaintiff under the LHWCA exceeded the total benefits available under Connecticut law.

The plaintiffs claim that, in addition to the total benefits awarded under the LHWCA, they are also entitled to the benefits under the Connecticut act allocated for scarring, as no such benefits were received under the LHWCA.[3] The defendants argue that the total amount awarded under the LHWCA should be credited against the total award allowable under the Connecticut act. As the former exceeded the latter, the defendants reason that any additional award under the Connecticut act, including that for scarring, was improper. In contrast, the plaintiffs argue that credit for the award

---

[2] General Statutes § 31-308 (d) provides in pertinent part:

"(d) In addition to compensation for total or partial incapacity or for a specific loss of a member or use of the function of a member of the body, the commissioner may award such compensation as he deems just, equal to sixty-six and two-thirds per cent of the average weekly earnings of the injured employee, but in no case more than the maximum weekly benefit rate as established in section 31-309, for any permanent significant disfigurement of, or permanent significant scar on, any part of the body up to two hundred and eight weeks, but no compensation shall be awarded when such disfigurement was caused solely by the loss of or the loss of use of a member of the body for which compensation payments are provided by the terms of subsection (b) of this section or for any scar resulting from an inguinal hernia operation or any spinal surgery."

[3] The scarring suffered by each plaintiff was within the scope of General Statutes § 31-308 (d), but outside the more limited circumstances under which benefits for scarring are available under the LHWCA. Title 33 U.S.C. § 908 (c) (20) provides that "[p]roper and equitable compensation not to exceed $7,500 shall be awarded for serious disfigurement of the face, head or neck or of other normally exposed areas likely to handicap the employee in securing or maintaining employment."

under the LHWCA should be determined by comparing the amount awarded in each specific category of benefits under each act rather than by comparing the total awards. The plaintiffs claim that since no award was made for scarring under the LHWCA, no credit was applicable to the scarring benefits awarded under the Connecticut act and, therefore, the latter should be awarded to the plaintiffs in addition to the total amount awarded under the LHWCA. The plaintiffs do not dispute, however, that the benefits awarded under the LHWCA for temporary total and permanent partial disability should be credited against the award available under the Connecticut act in those specific categories of benefits.

The workers' compensation commission awarded McGowan and Semataro, respectively, $3440.10 and $3234, which amounts represented benefits for scarring pursuant to § 31-308 (d). The defendants appealed the awards to the compensation review division, which affirmed the awards of the commissioner. This appeal followed. We find error.

In *Sun Ship, Inc.* v. *Pennsylvania,* 447 U.S. 715, 100 S. Ct. 2432, 65 L. Ed. 2d 458, reh. denied, 448 U.S. 916, 101 S. Ct. 37, 65 L. Ed. 2d 1179 (1980), the United States Supreme Court held that there is concurrent jurisdiction between state workers' compensation acts and the LHWCA for, as in this case, land based injuries sustained by maritime workers. The Supreme Court made clear, however, that its recognition of concurrent jurisdiction did not sanction double recovery. "[T]here is no danger of double recovery under concurrent jurisdiction since employers' awards under one compensation scheme would be credited against *any* recovery under the second scheme." (Emphasis added.) Id., 725 n.8. Footnote 8 in *Sun Ship,* cited *Calbeck* v. *Travelers Ins. Co.,* 370 U.S. 114, 82 S. Ct. 1196, 8 L. Ed. 2d 368 (1962), in which "the *full* amount of all payments made by the employer [under the Louisiana Com-

pensation Act] was credited against the award [under the LHWCA], and no impermissible double recovery [was] possible." (Emphasis added.) Id., 131.[4]

The crux of the plaintiffs' argument is that the category by category credit scheme which they advance does not result in double recovery. They argue that as no benefits for scarring were awarded the plaintiffs under the LHWCA, it follows that an award of benefits for scarring under the Connecticut act does not constitute double recovery. We find no indication in the *Sun Ship* decision, however, that the Supreme Court envisioned a credit system by which each specific category of benefits awarded under each act is to be compared. The language used in the *Sun Ship* and *Calbeck* decisions, addressing the crediting of awards in a system of concurrent jurisdiction, indicates that any amount awarded under one scheme is to be credited in full against any award available under the second scheme.[5]

The category by category credit system, if followed in this case, would allow the plaintiffs to recover total awards greater than that available under either the federal or state act alone. Congress amended the LHWCA in 1972 to include coverage of land based injuries sus-

[4] We recognize that the language quoted from *Calbeck* v. *Travelers Ins. Co.*, 370 U.S. 114, 82 S. Ct. 1196, 8 L. Ed. 2d 368 (1962), is dicta. See note, *"Bouford* v. *Bath Iron Works:* Defining Double Recovery Under State and Federal Compensation Laws for Maritime Workers," 39 Me. L. Rev. 464, 479 n.57 (1987) and accompanying text. This fact does not, however, minimize the import of that language since it was cited by the Supreme Court in *Sun Ship, Inc.* v. *Pennsylvania,* 447 U.S. 715, 100 S. Ct. 2432, 65 L. Ed. 2d 458, reh. denied, 448 U.S. 916, 101 S. Ct. 37, 65 L. Ed. 2d 1179 (1980), in support of its prohibition against double recovery.

[5] This conclusion is supported by the analogous situation in *Thomas* v. *Washington Gas Light Co.,* 448 U.S. 261, 100 S. Ct. 2647, 65 L. Ed. 2d 757 (1980), which held that the full faith and credit clause of article IV of the United States constitution does not preclude successive state workers' compensation awards. In so holding, the Supreme Court recognized that a supplemental award by the second state "allows full credit for payments pursuant to the earlier award." (Emphasis added.) Id., 281.

tained by maritime workers; 33 U.S.C. § 903 (a); in order to upgrade the benefits available for such injuries to a federal minimum in light of a "paucity of relief under state compensation laws." (Emphasis omitted.) *Sun Ship, Inc.* v. *Pennsylvania,* supra, 723.[6] In articulating a system of concurrent jurisdiction, the Supreme Court recognized that "if state remedial schemes are more generous than federal law, concurrent jurisdiction could result in more favorable awards for workers' injuries than under an exclusively federal compensation system. But we find no evidence that Congress was concerned about a disparity between adequate federal benefits and superior state benefits." (Emphasis in original.) Id., 724. We find this passage expressive of the Supreme Court's conclusion that if a total state award exceeded an award under the LHWCA, Congressional intentions were not offended by allowing a claimant to reap the benefits of the superior state award.

The plaintiffs propose, however, that they should be awarded the superior federal benefits as well as the superior benefits awarded under the Connecticut act. If the plaintiffs' proposition were true, the plaintiffs would receive awards for scarring which the federal scheme would not allow, thereby obtaining total awards greater than that available under either act alone. We find no indication that Congress, by amending the LHWCA to upgrade benefits to a federal minimum, or the Supreme Court, in articulating a scheme of concurrent jurisdiction, envisioned a system of crediting by which a claimant would receive a greater recov-

---

[6] Prior to the 1972 amendment of the LHWCA, such land based injuries fell outside the aegis of the federal act and relief for those injuries had been the province of state compensation laws. *Sun Ship, Inc.* v. *Pennsylvania,* 447 U.S. 715, 719, 100 S. Ct. 2432, 65 L. Ed. 2d 458 (1980); *Nacirema Operating Co.* v. *Johnson,* 396 U.S. 212, 219–24, 90 S. Ct. 347, 24 L. Ed. 2d 371 (1969).

ery than that available under either act alone. See A. Larson, "The Conflict of Laws Problem Between the Longshoremen's Act and State Workmen's Compensation Acts," 45 S. Cal. L. Rev. 699, 736–37 (1972) ("So far as the employer is concerned, the worst that can happen to him is . . . [that he] ends by giving the employee the benefit of the Act that happens to be more favorable.").

Furthermore, the plaintiffs' position is inconsistent with the 1984 amendments to the LHWCA, which, inter alia, added the following paragraph to the federal act: "Notwithstanding any other provisions of law, any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under this chapter pursuant to any other workers' compensation law . . . shall be credited against any liability imposed by this chapter." 33 U.S.C. § 903 (e) (applicable to claims pending and filed after September 28, 1984). It is at best paradoxical to suggest that Congress intended that "any amounts paid" under a state act be credited against "any liability imposed" by the LHWCA, but that, as the plaintiffs argue, awards first received pursuant to the LHWCA should be offset against subsequent state awards on a category by category basis. See C. Davis, "Concurrent Compensation Systems and the Exclusive Remedy Rule," 4 Connecticut Workers' Compensation Review Opinions, No. 1, pp. vi–x (1988).

We are also unable to reconcile the credit system advocated by the plaintiffs with the exclusive remedy provision of the Connecticut Workers' Compensation Act. General Statutes § 31-284[7] provides that the Con-

---

[7] General Statutes § 31-284 (a) provides: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows, except that compensa-

necticut act is a covered worker's exclusive remedy against the employer for work-related death or injury.[8] See *Blancato* v. *Feldspar Corporation,* 203 Conn. 34, 37–38, 522 A.2d 1235 (1987); *Greene* v. *Metals Selling Corporation,* 3 Conn. App. 40, 42–43, 484 A.2d 478 (1984). A system of concurrent jurisdiction under which a claimant may receive the maximum award allowable under either of two acts is consistent with the exclusive remedy rule because the higher award constitutes the claimant's exclusive remedy. Under the category by category credit scheme, however, a claimant might recover awards of some categories of Connecticut benefits concurrently with awards of benefits in other categories under the LHWCA. Such a system is in direct conflict with Connecticut's exclusive remedy rule and, therefore, it is difficult to envision that such a credit scheme was intended under the Connecticut act. See C. Davis, supra, pp. vii–viii.

The plaintiffs contend, however, that Connecticut's interest in compensating injured employees to the fullest extent possible; *Simaitis* v. *Flood,* 182 Conn. 24, 32, 437 A.2d 828 (1980); compels our adoption of the category by category credit system. It is disingenuous to argue that our holding today infringes upon the state's legitimate interest in securing maximum com-

tion shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter, provided nothing herein shall prohibit any employee from securing, by agreement with his employer, additional benefits from his employer for such injury or from enforcing such agreement for additional benefits."

[8] Such exclusive remedy provisions are a feature of every state's workers' compensation scheme. See 2A A. Larson, Workmen's Compensation Law, §§ 65.00 through 67.30 (1988). The remedy available under the LHWCA is also deemed exclusive for those employees who are entitled to compensation under the act. 33 U.S.C. § 905 (a).

pensation for claimants when the plaintiffs' awards under the LHWCA far exceed that available under the Connecticut act. The state's interest in compensating claimants for disfigurement or scarring is not infringed upon in any meaningful way under the facts of this case. Regardless of where an employee first seeks an award of benefits, he or she is entitled to the maximum amount allowed to an individual under either comprehensive legislative scheme.[9]

The plaintiffs cite *Landry* v. *Carlson Mooring Service,* 643 F.2d 1080 (5th Cir.), cert. denied, 454 U.S. 1123, 102 S. Ct. 970, 71 L. Ed. 2d 109 (1981), and the majority decision in *Bouford* v. *Bath Iron Works Corporation,* 514 A.2d 470 (Me. 1986), cert. denied, 479 U.S. 1065, 107 S. Ct. 951, 93 L. Ed. 2d 1000 (1987), in support of their position. In *Landry,* the plaintiff was allowed to seek a supplemental award under the LHWCA following an award of benefits under the Texas Workmen's Compensation Act. Under Texas law, attorney's fees received in workers' compensation proceedings consist of a percentage of a claimant's total recovery. The Court of Appeals for the Fifth Circuit held that a plaintiff's entire recovery under the Texas act, exclusive of that portion allocated for attorney's fees, must be credited against any subsequent recovery under the LHWCA. The court noted that the amount allocated for attorney's fees under the Texas award did not serve as compensation for the plaintiff's injury and, therefore, that the purpose of crediting—the avoidance of double recovery for compensable injuries—would not be served by crediting the percentage of the Texas

---

[9] This result is consistent with the system of crediting applicable to successive state workers' compensation awards. "[T]he worst that can happen to the [employer] is that they will have to pay no more than the highest compensation allowed by any single state having an applicable statute—which is the same amount that would always be payable if the claimant made the best-informed choice the first time." 4 A. Larson, Workmen's Compensation Law, § 85.60 (1988).

award allocated for attorney's fees. In reaching this conclusion, the court emphasized that the plaintiff would not in fact receive that portion of the Texas award allocated for attorney's fees. "[T]he LHWCA award should be diminished only by [the] state compensation the plaintiff actually realizes." *Landry* v. *Carlson Mooring Service,* supra, 1088.

We find the *Landry* decision to be inapposite to the present case. Attorney's fees were held not to be credited against a subsequent award under the LHWCA because such fees did not constitute a separate category of damages for the plaintiff's injury. Such a holding is far from an endorsement of a system by which each separate category of damages is to be offset. *Landry* does mandate that the total award for damages under the Texas act must be credited against the total damage award under the LHWCA, which is entirely consistent with our holding. We also note that, in the *Landry* decision, the plaintiff would actually realize an award no greater than the maximum to which he was entitled under either act.

In *Bouford* v. *Bath Iron Works Corporation,* supra, the Supreme Judicial Court of Maine held that a plaintiff could receive an award under the Maine Workers' Compensation Act for permanent impairment in addition to a total award under the LHWCA, which award included benefits for permanent partial disability. The court reasoned that the permanent impairment award under the Maine act was intended to provide compensation for the physical consequences of a work related injury and, therefore, such award was not duplicative of the permanent partial disability award under the federal act which provides compensation for loss of earning capacity. The court deemed the Maine permanent impairment award to be a superior state benefit which was recoverable under the *Sun Ship* decision, and which was distinct from the permanent partial disability

award under the LHWCA. We find, however, for the reasons set forth in our above discussion, that the category by category credit scheme adopted in *Bouford* is inconsistent with the *Sun Ship* decision, the Connecticut Workers' Compensation Act and the LHWCA. Accordingly, we decline to adopt such a credit scheme.

There is error, the decision of the compensation review division affirming the awards of the second district workers' compensation commission is reversed, and the awards of the workers' compensation commission are set aside.

In this opinion the other judges concurred.

