**Margaret BOUCHARD, Petitioner,**

v.

**GENERAL DYNAMICS CORPORATION, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

**No. 878, Docket 91–4149.**

United States Court of Appeals, Second Circuit.

Argued Jan. 30, 1992.

Decided May 11, 1992.

Stephen C. Embry, Groton, Conn. (Embry & Neusner, of counsel), for petitioner.

Michael S. Hertzig, Atty., U.S. Dept. of Labor, Washington, D.C. (Marshall J. Breger, Sol. of Labor, Carol A. De Deo, Associate Sol., and Janet R. Dunlop, Counsel for Longshore, of counsel), for respondent Director, Office of Workers' Compensation Programs.

Before WINTER, PRATT and MAHONEY, Circuit Judges.

WINTER, Circuit Judge:

Margaret Bouchard petitions for review of a decision of the Benefits Review Board crediting the amount paid in settlement of her claim under the Connecticut Workers' Compensation Act, Conn.Gen.Stat. §§ 31–275 et seq. (1987), against her prior award under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1988) ("Longshore Act"). Because the Longshore Act expressly mandates such an offset, whether or not a state engages in a similar crediting of federal awards, we deny the petition.

Mrs. Bouchard's husband, Victor Bouchard, was employed by General Dynamics Corporation/Electric Boat Division from 1961 to 1977. On June 30, 1983, Mr. Bouchard died of asbestosis and lung cancer, both of which were assertedly caused by his long-term occupational exposure to asbestos-containing products. After her husband's death, Mrs. Bouchard became entitled to widows' benefits under the Longshore Act. She was initially awarded $133.73 per week, fifty percent of her husband's average weekly salary. 33 U.S.C. § 909(b). Cost of living adjustments to this award have since been made, and Mrs. Bouchard currently receives $149.00 per week. General Dynamics is self-insured with regard to these Longshore Act benefits.

Following the issuance of her federal benefits, Mrs. Bouchard filed a claim under the Connecticut Workers' Compensation Act. Connecticut provides for more generous widows' benefits than the Longshore Act, see Conn.Gen.Stat. § 31–306(b)(2) (widow entitled to 66⅔ percent of husband's average weekly wage), and also makes larger annual cost of living adjustments to those benefits. Had Mrs. Bouchard successfully litigated her Connecticut claim, her present state benefits would amount to $249.75 per week. In contrast to its exposure under the Longshore Act, General Dynamics is insured with regard to state workers' compensation claims, and, pursuant to Conn.Gen.Stat. § 31–340, General Dynamics' carriers were parties to the compensation proceedings and directly liable for any award. The carriers vigorously opposed Mrs. Bouchard's claim, arguing, inter alia, that the claim was untimely and that, even if timely, no benefits were presently due.

After five years of litigation, Mrs. Bouchard settled her Connecticut claim for a lump sum of $20,000. The version of the settlement stipulation in the appendix submitted by Mrs. Bouchard is signed only by her. It indicates that General Dynamics, although formally a party to the proceedings and to the settlement, did not participate through counsel in the litigation. The stipulation states in part:

[it is agreed that] if this claim were fully prosecuted and if the claimant were to prevail that the total widows' benefits due the claimant under Connecticut Law

would be greater than those being paid or likely to be paid under the Longshore and Harbor Workers' Compensation Act. It also states:

[W]hile the respective claims are made in good faith, the claim is a disputed one and the results, if fully prosecuted, will be uncertain.

The settlement had to be approved by a state Compensation Commissioner, and Mrs. Bouchard's counsel sent, on his firm's letterhead, a draft order approving the settlement, which the Commissioner signed. The order read:

### AWARD BY STIPULATION

Upon the within and foregoing Agreement being this day submitted to and examined by the Undersigned, *I determine that benefits are due under the Connecticut Act at a higher rate than is being paid under the Longshore and Harbor Workers' Compensation Act.* I further determine that the proposed settlement is a just and reasonable settlement of the claim under an Act and ought to in all respects be ratified and confirmed.

WHEREON, IT IS ORDERED, ADJUDGED AND AWARDED that compliance with this Agreement shall constitute a full, final and complete settlement, accord and satisfaction of any and all claims of the claimant herein against the respondents, *for benefits due the claimants under the Connecticut Workers' Compensation Act over and above the benefits being paid under the Longshore and Harbor Workers' Compensation Act,* and is hereby ratified.

(emphasis added). The order thus essentially stated that Mrs. Bouchard was entitled to a state award greater than the Longshore Act award and that the settlement amount was to be paid in addition to the Longshore Act award. However, the settlement stated neither of these propositions.

Of the lump sum of $20,000, Mrs. Bouchard was obligated to pay $4,000 to her attorney. Mrs. Bouchard's brief indicates that the remaining $16,000 would provide her with weekly payments of approximately $100.75 for an undisclosed period of time, exactly the difference between her current weekly federal benefits of $149.00 and $249.75, the maximum amount she might have been awarded under the Connecticut workers' compensation scheme. Evidently, Mrs. Bouchard's counsel assumed, as the order he drafted for the state Compensation Commissioner stated, that the state settlement award would be paid in addition to the Longshore Act award, leading to total weekly payments of $249.75. Further prosecution of the state claim must, therefore, have seemed superfluous to him.

The difficulty in this assumption is that the Longshore Act states that:

[n]otwithstanding any other provision of law, any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under this chapter pursuant to any other workers' compensation law ... shall be credited against any liability imposed by this chapter.

33 U.S.C. § 903(e). In a proceeding concerning Mrs. Bouchard's federal claim that occurred in circumstances not revealed to us by the parties, a Department of Labor Administrative Law Judge held that the entire $20,000 state settlement had to be credited against Mrs. Bouchard's award under the Longshore Act pursuant to Section 903(e). Mrs. Bouchard appealed this decision to the Benefits Review Board, which affirmed the award of a credit, but reduced the amount of the credit by the $4000 attributable to Mrs. Bouchard's attorney's fees. Mrs. Bouchard petitions us to overturn the order of the Benefits Review Board crediting $16,000 against her Longshore Act award. Although Mrs. Bouchard will receive nothing from the state settlement—because it is smaller than the federal award—if we uphold the crediting required by the Benefits Review Board, we must deny the petition.

■ Mrs. Bouchard's principal argument against crediting under Section 903(e) is that Connecticut has a similar crediting rule, whereby any Longshore Act award

will be credited against and thus reduce the size of a state workers' compensation award. She claims that the settlement stipulation acknowledged that rule in the language quoted *supra* stating that if she had successfully prosecuted her state claim, the Connecticut benefits would exceed her Longshore Act award. She also points to the order approving the settlement that states that the state award is to be paid in addition to the Longshore Act award. In effect, she asks us to treat the state award as one of $249.75 but reduced to $100.75 as a result of crediting the $149.00 Longshore Act award against it.

Her argument reaches an attractive result but nevertheless has two fatal flaws. First, it asks us to do what the Supreme Court forbids, namely, to ignore plain statutory language. *See, e.g., Connecticut National Bank v. Germain*, — U.S. —, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Section 903(e) of the Longshore Act states that "amounts paid [Mrs. Bouchard's Connecticut award] ... shall be credited against any liability imposed by this Chapter [Mrs. Bouchard's federal award]." There is simply no possible reading of this language that supports a claim that a Connecticut settlement smaller than a federal award must be *added* to the federal award until the total constitutes the maximum award that might have been available under Connecticut law. The state settlement was not the present value of weekly payments of $249.75; the carriers agreed to pay only $20,000, or the present value of weekly payments of $100.75, and the federal payor is entitled to credit that lump sum. Because the language of the statute is clear, we may not look to the legislative history, *see Germain*, 112 S.Ct. at 1149, although we also note that no pertinent history of any weight has been cited to us.

■ Second, Mrs. Bouchard's view of Connecticut law—that federal awards must be credited against state awards—even if correct, does not alter our analysis because, under the Supremacy Clause, U.S. Const. art. VI, cl. 2, the Longshore Act cannot be superseded by a state law, much less an order of a Compensation Commissioner. The crediting by a state of a federal benefit against a state benefit, in other words, cannot alter the crediting directed by a federal statute, even though it deprives a claimant of any benefit from a state award smaller than the federal award. Of course, where a state law interferes with the full execution of federal law, the state law will be preempted. *See, e.g., Darling v. Mobil Oil Corp.*, 864 F.2d 981, 986 (2d Cir.1989). Arguably, the Connecticut policy—which may not be what petitioner conceives it to be for reasons stated *infra*—might be viewed as somehow penalizing Longshore Act claimants and therefore preempted. However, because the state settlement is smaller than the federal award, that issue is not before us.

Although the decision in this case seems a self-evident result of the application of well-known principles, the background and painful outcome of this matter—a state workers' compensation settlement without benefit to the claimant—oblige us to make some clarifying remarks lest future claimants suffer a similar fate.

Our research suggests that this is a case of first impression in the federal courts. A factual anomaly may be the reason the issue has never before been raised. General Dynamics is self-insured under the Longshore Act but has insurance coverage for state workers' compensation claims. This may be a departure from a general practice of employers using the same insurers for both Longshore Act and state workers' compensation coverage. When both types of claims are covered by the same insurer, and an employee has a valid claim under each compensation scheme, the insurers must always pay the higher amount awarded under either scheme. In such circumstances, settlement negotiations can safely ignore crediting requirements and focus on the total to be paid to the claimant. The order signed by the state Compensation Commissioner—adding a state settlement to what an insurer is already paying under the Longshore Act—would be quite appropriate under those circumstances. Where there are two different payors, however—one under the Longshore Act and one un-

der the state compensation scheme—crediting requirements cannot be ignored, particularly when the state negotiations follow a federal award. The settlement in this case may well have resulted from a failure to recognize the ramifications of the dual payor anomaly.

The negotiations may also have proceeded on a flawed assumption. Mrs. Bouchard has vigorously brought to our attention that the Longshore Act intended that a claimant receive the most generous award, whether state or federal, to which the claimant is entitled. Therefore, she argues, she is entitled to weekly payments of $249.75. We do not dispute the general proposition; we do, however, dispute its applicability to this case. Had Mrs. Bouchard established her entitlement to a weekly state award of $249.75, nothing in the Longshore Act would have diminished that award. However, Mrs. Bouchard never established her entitlement to any Connecticut workers' compensation benefits beyond the lump sum of $20,000, providing $100.75 per week for an undetermined period of time. Her claim was contested from the start by the insurers, and the final settlement was for less than the maximum available. Although the stipulation noted that if Mrs. Bouchard had litigated and fully prevailed on her state claim, her state award would have exceeded the Longshore Act award, it also stated that "while the respective claims are made in good faith, the claim is a disputed one and the results, if fully prosecuted, will be uncertain." By settling, therefore, Mrs. Bouchard never established that she was entitled to an award greater than that received under the Longshore Act. The basic premise of her claim to the highest award is thus negated.

Mrs. Bouchard also claims that she could not in reality obtain an award larger than that available under the federal act if Connecticut's policy of crediting Longshore Act awards against state awards is combined with a subsequent crediting of the resulting state award against the initial federal award. If so, we are powerless to alter that result. As noted, the Longshore Act's crediting provision cannot be negated by either state law or by a stipulated settlement, and, if Connecticut law is as she describes it, Mrs. Bouchard has still received the amount to which she is "entitled."

Moreover, Mrs. Bouchard's description of Connecticut law is probably mistaken. It is based entirely on a reading of language in *McGowan v. General Dynamics Corp./Electric Boat Div.*, 15 Conn.App. 615, 546 A.2d 893 (1988), *aff'd*, 210 Conn. 580, 556 A.2d 587 (1989). In *McGowan*, in contrast to the instant matter, the federal award was the more generous. 546 A.2d at 895. At issue was whether, in addition to the benefits received under the Longshore Act, the claimant was entitled to state benefits for scarring, a category of benefits not available under the Longshore Act. The Connecticut Workers' Compensation Commission awarded such benefits. The Connecticut Appellate Court reversed, holding that neither the federal nor the state workers' compensation schemes contemplated a category by category credit system. It also noted that if such a system were adopted, it might "allow the plaintiffs to recover total awards greater than that available under either the federal or state act alone." *Id.* at 896. The crediting of one award against another was thus not involved.

Mrs. Bouchard is correct that language in *McGowan* suggests that Connecticut might credit a federal award against a state award, *see id.* at 895 ("[t]he plaintiffs do not dispute, however, that the [Longshore Act] benefits ... should be credited against the award available under the Connecticut act"). However, there is also language in the opinion suggesting the contrary. The court thus acknowledged Connecticut's commitment to insuring that claimants receive the maximum benefits available, *id.* at 898 ("[r]egardless of where an employee first seeks an award of benefits, he or she is entitled to the maximum amount allowed to an individual under either comprehensive legislative scheme"). Because a claimant cannot receive the highest state award if a lower federal award is credited against it and the state award is then credited against the federal, this latter

language strongly suggests that had Mrs. Bouchard litigated her workers' compensation scheme to a successful conclusion—an award of $249.75 weekly—it would not have been reduced by crediting the federal award against it.

*McGowan,* therefore, hardly laid down the rule suggested by Mrs. Bouchard. The issue of crediting a federal award against a state award was not at issue, and the language of the decision looks both ways. Moreover, Bouchard has suggested no rational grounds for anticipating that the Connecticut judiciary would adopt a policy not dictated by statute that penalizes recipients of Longshore Act benefits by stripping them of their rights to more generous state benefits. Of course, that issue is not before us either, and we have engaged in this exegesis only to alert future claimants to the pitfall encountered by Mrs. Bouchard.

We therefore deny the petition. We express no opinion on whether the state settlement is subject to being reopened under Connecticut law.