999 F.2d 1341
 1994 A.M.C. 1809
 E.P. PAUP COMPANY; Insurance Company of North America, Petitioners,
v.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR; Arthur McDougall, Respondents,
State of Washington, Department of Labor and Industries,
Respondent-Intervenor.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, Petitioner,
v.
E.P. PAUP COMPANY; Insurance Company of North America,
Inc.; Arthur McDougall, Respondents.
 Nos. 91-70325, 91-70350.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 10, 1992.
Decided July 2, 1993.
 
 Thomas Owen McElmeel, McElmeel & Schultz, Seattle, WA, for petitioners.
 
 
 1
 David S. Fortney, Deputy Sol. of Labor, Carol A. DeDeo, Associate Sol., Janet R. Dunlop, Counsel for Longshore, Michael S. Hertzig, U.S. Dept. of Labor, Washington, DC, for respondent Director.
 
 
 2
 Kenneth Hobbs, Stafford, Frey, Cooper & Stewart, Seattle, WA, for respondent Arthur L. McDougall.
 
 
 3
 John R. Wasberg, Asst. Atty. Gen., State of Washington, Dept. of Labor and Industries, Seattle, WA, for respondent-intervenor.
 
 
 4
 Petitions for Review of an Order of the Benefits Review Board.
 
 
 5
 Before: WALLACE, Chief Judge, SKOPIL, and LEAVY, Circuit Judges.
 
 SKOPIL, Circuit Judge:
 
 6
 This is an appeal from a final decision of the Benefits Review Board ("Board") awarding disability benefits to an injured employee, Arthur McDougall ("McDougall"), and directing that his employer, E.P. Paup Company ("employer"), reimburse the State of Washington ("state") for benefits previously paid under state workers' compensation law. The employer and its federal workers' compensation carrier, Insurance Company of North America ("INA"), contend on appeal that 33 U.S.C. § 903 of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950 (1988), preempts state law and prohibits reimbursement to the state. They also appeal the Board's determination that they are not entitled to special fund relief pursuant to 33 U.S.C. § 908(f) which provides that when a preexisting condition contributes to an employee's permanent disability, liability after 104 weeks is shifted from employer and carrier to a special fund administered by the Director, Office of Workers' Compensation Programs, United States Department of Labor ("Director"). We reject these contentions and we affirm the Board's decision with a minor modification to its reimbursement order.
 
 FACTS AND PRIOR PROCEEDINGS
 
 7
 McDougall injured his left hand in a non-work-related car accident in 1978 and did not work for approximately 18 months. In 1979, he injured his lower back while working for employer as a pile buck and he has not worked since that injury. He sought workers' compensation benefits for his back injury under state law and later under the LHWCA. The state paid $53,548.08 in compensation and $16,244.95 in medical expenses before it stopped paying benefits upon learning that LHWCA benefits had been awarded.
 
 
 8
 The parties stipulated at the LHWCA hearing that McDougall was permanently and totally disabled. The Administrative Law Judge ("ALJ") awarded McDougall temporary total disability benefits for two years and permanent total disability benefits thereafter. He determined that Director's special fund would be liable for payments after the expiration of 104 weeks pursuant to 33 U.S.C. § 908(f) because McDougall's permanent total disability was the result of his previous hand injury and his work-related back injury. The ALJ also allowed offsets to INA and Director's special fund pursuant to 33 U.S.C. § 903(e) for compensation McDougall had received from the state. Thus, the ALJ awarded McDougall the difference between state and LHWCA benefits.
 
 
 9
 Director appealed the section 908(f) ruling to the Board. While that appeal was pending, McDougall petitioned the ALJ for a modification of his award after the state ordered McDougall to reimburse the payments it made before he was determined to be covered under the LHWCA. The state was allowed to intervene in the proceedings. The ALJ granted the modification, finding that he had mistakenly determined the source of McDougall's state benefit payments.
 
 
 10
 On reconsideration of the modification, the ALJ vacated the section 903(e) credit and ordered INA and the special fund to reimburse the state for McDougall's state benefits. The ALJ held that INA was not required to reimburse the state for medical expenses. The Board affirmed the ALJ's determination that INA was not entitled to an offset under section 903(e). It ordered INA to reimburse the state for benefits it paid to McDougall. It held that the state was entitled to reimbursement for medical expenses if on remand the ALJ determined that McDougall was entitled to medical benefits under the LHWCA. The Board reversed the ALJ's ruling that INA was entitled to special fund relief under section 908(f), holding that the evidence in the record was not sufficient to support the ALJ's determination that McDougall's hand injury contributed to his permanent total disability.
 
 
 11
 On remand, the parties stipulated that McDougall's medical expenses for his back injury were covered under the LHWCA and represented reasonable charges. The ALJ ordered INA to reimburse the state for those medical expenses. The ALJ rejected INA's offer of proof of additional evidence regarding the section 908(f) issue. The Board affirmed the ALJ's decision on remand and employer, INA and Director timely petition this court for review.
 
 DISCUSSION
 
 12
 We review Board decisions for errors of law and adherence to the substantial evidence standard. Port of Portland v. Director, OWCP, 932 F.2d 836, 838 (9th Cir.1991). The Board must accept the ALJ's findings unless they are contrary to law, irrational or unsupported by substantial evidence. Id. We accord "considerable weight" to the construction of the statute urged by the Director charged with administering it. Force v. Director, OWCP, 938 F.2d 981, 983 (9th Cir.1991). The Board's interpretation of a statute, however, is not entitled to any special deference because the Board is not a policymaking body. Port of Portland, 932 F.2d at 838.
 
 I.
 
 13
 INA and Director argue that the Board's order directing INA to reimburse the state for benefits paid to McDougall violates section 903(e) of the LHWCA.[1] That provision gives an employer or its carrier an offset credit when a claimant has received benefits for the same injury under a state workers' compensation law. Section 903(e) provides:
 
 
 14
 Notwithstanding any other provision of law, any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under this chapter pursuant to any other workers' compensation law or section 688 of Title 46 (relating to recovery for injury to or death of seamen) shall be credited against any liability imposed by this chapter.
 
 
 15
 33 U.S.C. § 903(e).
 
 
 16
 The Board held that section 903(e) does not apply here because state law excludes coverage for workers covered under the federal maritime laws. State law provides in part:
 
 
 17
 (1) The provisions of this title shall not apply to a master or member of a crew of any vessel, or to employers and workers for whom a right or obligation exists under the maritime laws for personal injuries or death of such workers.
 
 
 18
 ....
 
 
 19
 (4) In the event payments are made under this title prior to the final determination under the maritime laws, such benefits shall be repaid by the worker or beneficiary if recovery is subsequently made under the maritime laws.
 
 
 20
 Wash.Rev.Code § 51.12.100 (1990) (amended 1991). INA and Director dispute the Board's holding on several grounds. Director contends that either state law does not apply or its application to these facts is prohibited by federal law. INA argues that the state statute is preempted by the federal legislation.
 
 A.
 
 21
 Our first inquiry is whether section 51.12.100 applies in this case. Director contends that it does not because there has not yet been a state adjudication of the debt owed by McDougall. We reject this contention for two reasons. First, nothing in the state statute or case law construing it requires that an administrative order be issued before reimbursement can take place. Second, the state Department of Labor and Industries has ordered McDougall to repay the state. The State Board of Industrial Insurance Appeals reversed and remanded at the request of the parties with the express understanding that the state would hold its repayment order in abeyance pending the outcome of the LHWCA proceedings.[2]
 
 B.
 
 22
 INA argues that section 903(e) preempts the state's reimbursement statute. Preemption may occur when Congress has expressly precluded state legislation, an expression of such intent can be inferred from the structure and purpose of the federal statute, or when state law conflicts with federal law or stands as an obstacle to achieving federal objectives. Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby, 958 F.2d 941, 943 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 80, 121 L.Ed.2d 44 (1992). There is a presumption, however, against concluding that state legislation is preempted by an act of Congress.[3] Id. Our responsibility is to attempt to " 'reconcile the operation of both statutory schemes with one another rather than holding [that one has been] completely ousted.' " Id. at 949 (quoting Ray v. Atlantic Richfield Co., 435 U.S. 151, 183, 98 S.Ct. 988, 1007, 55 L.Ed.2d 179 (1978)).
 
 
 23
 On first inspection, the plain language of section 903(e) appears to support the argument that state law is preempted. Section 903(e) provides that "[n]otwithstanding any other provision of law" an employer has the right to receive an offset credit for "any amounts paid to an employee ... pursuant to any other workers' compensation law." 33 U.S.C. § 903(e) (emphasis added). A contention could be made that the federal statute covers any and all payments to an employee, even those made erroneously or provisionally.
 
 
 24
 A closer review, however, satisfies us that Congress did not intend to expressly preempt the state's reimbursement scheme. First, we have determined that the phrase "[n]otwithstanding any other provision of law" is not necessarily preemptive. See In re Glacier Bay, 944 F.2d 577, 582 (9th Cir.1991); Golden Nugget, Inc. v. American Stock Exch., Inc., 828 F.2d 586, 588-89 (9th Cir.1987). We concluded that the phrase does not always provide a clear indication that Congress intended to preempt, particularly when there is legislative intent to the contrary. Second, there is a plausible argument that the benefits here were not paid "pursuant to" the states' workers' compensation law. " 'Pursuant to' means 'in the course of carrying out; in conformance to or agreement with: according to' and when used in a statute, is a restrictive term." Black's Law Dictionary 1237 (6th ed. 1990) (quoting Knowles v. Holly, 82 Wash.2d 694, 513 P.2d 18, 23 (1973)). Because state law excludes from its coverage workers who are covered under the LHWCA, the benefits here were not paid "pursuant to" the state's workers' compensation law.
 
 
 25
 Although a close question is presented, we conclude that section 903(e) does not expressly preempt the state statute. To determine whether Congress may have nevertheless intended to preempt, we turn to an examination of the historical development of the federal law and the legislative history of section 903(e). The history of the LHWCA demonstrates that since 1972 Congress has intended to allow, but not to require, concurrent state and federal coverage of workers' compensation claims.[4] Congress amended the LHWCA in 1972, in part to raise the amount of compensation and to extend coverage to certain contiguous land areas. Director, OWCP v. Perini North River Assoc., 459 U.S. 297, 313, 103 S.Ct. 634, 645, 74 L.Ed.2d 465 (1983). "In so doing, the Longshoremen's Act became, for the first time, a source of relief for injuries which had always been viewed as the province of state compensation law." Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 719, 100 S.Ct. 2432, 2436, 65 L.Ed.2d 458 (1980). In Sun Ship the issue was whether extended shoreside coverage under the 1972 amendments had the effect of displacing concurrent state remedies. The Court held that it did not, reasoning that the 1972 extension of federal jurisdiction supplemented rather than supplanted state compensation law. Id. at 720, 100 S.Ct. at 2436.
 
 
 26
 Congress amended the LHWCA in 1984 to include section 903(e). At that time Congress also considered amending section 905(a) to preclude a worker eligible for LHWCA benefits from receiving an award under state compensation. The proposed amendment provided that the "liability of an employer prescribed in section 4 shall be exclusive and in place of all other liability including any liability imposed by or arising out of any other workers' compensation law...." S.Rep. No. 98-81, 98th Cong., 1st Sess., at 50 (1983); H.R.Rep. No. 98-570, 98th Cong., 1st Sess., at 26 (1983), 1984 U.S.Code Cong. & Admin.News 2734, 2759 (quoted in Peter v. Hess Oil Virgin Islands Corp., 903 F.2d 935, 949-50 (3d Cir.1990), cert. denied, 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991)). The amendment passed the Senate but failed in the House. H.R. Conf.Rep. No. 1027, 98th Cong., 2d Sess., at 23-24 (1984), reprinted in 1984 U.S.Code Cong. & Admin.News 2773-74. Congressional rejection of a provision making coverage under the LHWCA exclusive demonstrates that the phrase "notwithstanding any other provision of law" was not intended to preempt state workers' compensation law or to upset the scheme allowing concurrent federal and state coverage.
 
 
 27
 There is no direct conflict between section 51.12.100 and section 903(e) because nothing in the federal legislation prohibits the state from excluding coverage to workers eligible for LHWCA benefits or from seeking reimbursement of amounts paid to an employee while pursuing a federal remedy. Contra Bouchard v. General Dynamics Corp., 963 F.2d 541, 544 (2d Cir.1992) (Connecticut law determined to conflict with section 903(e)). Nevertheless, INA contends that section 51.12.100 stands as a direct obstacle to the Congressional goal of broadening an employer's right to receive an offset. McDougall and the state argue that the sole purpose of section 903(e) is to prevent double recovery. To determine whether state law obstructs a federal goal, we must first determine the purpose of section 903(e).
 
 
 28
 Section 903(e) codified the credit doctrine, which permits the deduction of certain types of payments in order to prevent an injured worker from receiving a double recovery. Todd Shipyards Corp. v. Director, OWCP, 848 F.2d 125, 126 (9th Cir.1988). Prior to section 903(e), the credit doctrine allowed offset of benefits against LHWCA awards only if prior benefits were awarded under the LHWCA. Id. at 127. Section 903(e) thus broadened the credit doctrine to allow a credit against an LHWCA award of any other workers' compensation benefits or Jones Act benefits. Id.
 
 
 29
 In Lustig v. United States Dep't of Labor, 881 F.2d 593, 595 (9th Cir.1989), we noted that the sole purpose of the credit doctrine was to prevent double recoveries. INA argues that even before section 903(e) was enacted, there was no danger of double recovery. It relies on Sun Ship where the Court noted that "there is no danger of double recovery under concurrent jurisdiction since employers' awards under one compensation scheme would be credited against any recovery under the second scheme." 447 U.S. at 725 n. 8, 100 S.Ct. at 2439 n. 8. That reliance, however, is misplaced. Because there was no issue of double recovery in that case, the Court's remarks were dicta. Moreover, contrary to the Court's statement, double recovery was a possibility before the enactment of section 903(e). When it enacted section 903(e) in 1984, Congress intended to overrule United Brands Co. v. Melson, 594 F.2d 1068 (5th Cir.1979). See 130 Cong.Rec. 8326 (1984) (explanation of House amendment to S. 38); 130 Cong.Rec. 25905 (1984) (remarks of Rep. Erlenborn). In Melson, the court held that an employee may recover compensation under both the LHWCA and the state act, and there was no requirement in the LHWCA that the employee's federal award be reduced by the amount of the state settlement. Melson, 594 F.2d at 1074-75.
 
 
 30
 Thus, the legislative history shows that Congress intended to prevent double recovery by broadening an employer's right to receive an offset. Section 51.12.100 does not stand as a direct obstacle to accomplishing that goal. To the contrary, because section 51.12.100(4) requires repayment of state benefits paid to the worker when there is coverage under the LHWCA, the state statute actually furthers the objective of section 903(e) by preventing double recovery. There is no issue here involving double recovery or McDougall's eligibility for benefits under the LHWCA.
 
 
 31
 Section 903(e) applies only if there is concurrent state and federal coverage. There is nothing in the LHWCA to indicate that a state cannot exclude from its jurisdiction injuries that are covered by federal law. Allowing the state to make such an exclusion does not stand as an obstacle to the Congressional objective of preventing double recovery by broadening an employer's right to recover offsets. Similarly, the LHWCA does not require that states provide concurrent jurisdiction. Under state law, McDougall was not entitled to state compensation because a "right or obligation" existed for him under the LHWCA. When Congress wants to require states to be primary providers of benefits or require claimants to pursue state benefits prior to or contemporaneously with federal benefits, it knows how to do so. See Rose v. Arkansas State Police, 479 U.S. 1, 4, 107 S.Ct. 334, 335, 93 L.Ed.2d 183 (1986) (construing Public Safety Officers' Death Benefits Act, 42 U.S.C. § 3796(e)); Freeman v. Harris, 625 F.2d 1303, 1307 (5th Cir.1980) (construing Black Lung Benefits Act, 30 U.S.C. § 923(c)).
 
 
 32
 We conclude that section 903(e) does not preempt the state statute. Section 51.12.100 does not operate as an obstacle to the achievement of federal objectives. INA and Director have not overcome the presumption against concluding that the state statute is preempted. We will presume that Congress was aware of the state statute when it enacted section 903(e) in 1984, see Goodyear, 486 U.S. at 184-85, 108 S.Ct. at 1711-12, and it chose not to mandate concurrent jurisdiction or prohibit exclusive jurisdiction. The state can exclude coverage for workers who are covered under the LHWCA and it may seek reimbursement of amounts paid to an employee while pursuing a federal remedy. We affirm the Board's conclusion that INA is not entitled to an offset under section 903(e).[5]
 
 C.
 
 33
 INA contends that if it is required to pay additional benefits, the Board erred by requiring INA, rather than McDougall, to reimburse the state. INA asserts that the state's statutory scheme does not permit an order of reimbursement from anyone other than a claimant. The ALJ concluded that it was "administratively more efficient" to require direct payment from INA to the state. The Board affirmed that decision without discussion.
 
 
 34
 We agree that the Board erred when it ordered INA to pay the state directly. That conclusion contravenes Wash.Rev.Code § 51.12.100(4), which provides that benefits shall be "repaid by the worker" if recovery is made under the maritime laws. Furthermore, it contravenes 33 U.S.C. §§ 914(a), 902(12). Section 914(a) provides that compensation shall be paid "directly to the person entitled thereto." See Lauzon v. Strachan Shipping Co., 782 F.2d 1217, 1221 (5th Cir.1985) (holding a check at insurer's office is not payment directly to claimant). Section 902(12) defines "compensation" as the "money allowance payable to an employee."
 
 
 35
 Director argues that 33 U.S.C. § 916 of the LHWCA precludes the Board from ordering that either INA or McDougall repay the state. Section 916 provides that LHWCA compensation "shall be exempt from all claims of creditors and from levy, execution, and attachment or other remedy for recovery or collection of a debt." If the state is a "creditor," payment of LHWCA benefits directly to the state would violate section 916. We conclude, however, that the state is not a "creditor" under section 916 in this situation. The Third Circuit rejected a similar argument by Director in Aetna Life Ins. Co. v. Harris, 578 F.2d 52 (3d Cir.1978). In Harris, Aetna provided coverage for non-occupational injuries and sought reimbursement for amounts paid out for work-related injuries. Director argued that Aetna's claim was precluded by section 916 because it was a "creditor." The court rejected that argument, reasoning that Aetna was not in the position of an ordinary creditor whose claim predates and is independent of a claimant's right to compensation under the LHWCA. Id. at 55. The court concluded that Aetna's right to repayment arose because the claimant was found to be entitled to compensation under the Act and, therefore, was not entitled to compensation under the Aetna policy. Id. Here, the state is seeking to recover payments that were improperly paid and its claim to reimbursement arises because McDougall was found to be entitled to compensation under the LHWCA. Because the state is not a creditor under these facts, section 916 does not prohibit the state's recovery of funds.
 
 
 36
 In summary, we conclude that the Board erred when it ordered INA to pay the state directly. Accordingly, we modify the Board's order to require INA to pay McDougall an amount equal to the state payments and require McDougall to pay that amount to the state. See 33 U.S.C. § 921(c) (appellate court has the power to affirm, modify or set aside the Board's order, in whole or in part).II.
 
 
 37
 INA contends that the Board erred by holding that employer was not entitled to special fund relief pursuant to 33 U.S.C. § 908(f). Section 908(f) provides that where an employee is permanently and totally disabled, and the disability is found not to be caused solely by the injury incurred on the job, the employer's liability is limited to a maximum of 104 weeks. See FMC Corp. v. Director, OWCP, 886 F.2d 1185, 1186 (9th Cir.1989). After that time period, liability is shifted from the employer to the special fund established by 33 U.S.C. § 944. The purpose of section 908(f) is to encourage hiring of partially disabled people. Lockheed Shipbuilding v. Director, OWCP, 951 F.2d 1143, 1144 (9th Cir.1991).
 
 
 38
 To establish section 908(f) relief, the employer must show:
 
 
 39
 (1) that the employee had an existing permanent partial disability prior to the employment injury; (2) that the disability was manifest to the employer prior to the employment injury; and (3) that the current disability is not due solely to the most recent injury.
 
 
 40
 Id. (quoting Todd Pac. Shipyards v. Director, OWCP, 913 F.2d 1426, 1429 (9th Cir.1990)). There is no dispute here that McDougall had a preexisting permanent partial disability that was manifest to employer. INA contends that McDougall's disability was not due solely to his back injury.
 
 
 41
 INA argues that the parties' stipulation of facts at the 1984 LHWCA hearing constitutes substantial evidence on this disability issue. At that hearing, INA and McDougall stipulated that McDougall's disability was a combination of his left hand and back problem and further, that although his back injury was his major problem, his hand injury prevented him from doing sedentary work requiring repeated hand movements. The ALJ found that INA was entitled to section 908(f) relief because McDougall's permanent total disability resulted from his back injury and the previous injury to his hand. The Board reversed, holding that section 908(f) did not apply because there was not sufficient evidence in the record to support the ALJ's determination that McDougall's hand condition contributed to his permanent total disability.[6]
 
 
 42
 We conclude that the stipulation does not constitute substantial evidence because Director did not participate. Director has authority to administer the special fund. See 33 U.S.C. § 944(b); 20 C.F.R. §§ 701.202(a); 702.143 (1984). Director is the only party with a real interest in protecting the financial integrity of the special fund. Director, OWCP v. Cargill, Inc., 718 F.2d 886, 888 (9th Cir.1983). It follows that agreements between an employer and a claimant that affect the liability of the special fund cannot be used against Director. See Brady v. J. Young & Co., 17 BRBS 46, aff'd on reconsideration, 18 BRBS 167 (1985); cf. 33 U.S.C. § 908(i)(4) (providing that special fund is not liable for reimbursement of sums paid under settlement).
 
 
 43
 INA argues that by not appearing at the hearing, Director waived the right to argue that the stipulation does not constitute substantial evidence. INA's argument is without merit. If we conclude that Director waived the right to challenge a stipulation not agreed to, the effect is to foreclose Director's right to appeal. Such a conclusion is contrary to established precedent that Director has the right to petition for review of any decision adversely affecting the special fund. See Cargill, 718 F.2d at 888; see also Goldsmith v. Director, OWCP, 838 F.2d 1079, 1080 (9th Cir.1988).
 
 
 44
 INA also contends that the ALJ correctly found that the medical reports established that McDougall's disability was due to a combination of his two injuries. We conduct an independent review to determine whether the ALJ's findings are supported by substantial evidence. Lockheed, 951 F.2d at 1144-45. Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 1145 (internal quotations omitted).
 
 
 45
 INA must demonstrate that the second injury alone did not cause McDougall's permanent total disability. See FMC, 886 F.2d at 1186-87. It is not sufficient if the evidence indicates only that his two injuries create a greater disability than would his back injury alone. Id. at 1187. If the later injury was enough to totally disable McDougall, it is not relevant that his preexisting hand injury made his total disability even greater. See Director, OWCP v. Luccitelli, 964 F.2d 1303, 1305-06 (2d Cir.1992).
 
 
 46
 INA relies primarily on a report from the Central Seattle Panel of Consultants, which concluded that McDougall's back injury did not totally disable him:
 
 
 47
 [McDougall] is probably permanently unfit to return to work as a piledriver. His ability to work is restricted. This Panel does not feel that he is totally and permanently disabled.
 
 
 48
 INA argues that the combination of the two injuries increased the partial disability found by the Seattle panel to the total disability found by the ALJ.
 
 
 49
 INA's argument is misleading. First, its argument implies that there was a dispute as to whether McDougall was permanently totally disabled. The parties stipulated to that fact. Second, its argument implies that there is no other evidence in the record to show that the back injury totally disabled him. There are two medical reports to the contrary. A March 1981 letter from Dr. Brzusek states:
 
 
 50
 I do not feel that [McDougall] will ever be able to return to his old job. It certainly will be a challenge to find any kind of viable occupation for this gentleman even with the possibility of reducing his pain with a lumbar fusion.
 
 Dr. Brzusek's medical report states:
 
 51
 Because of [McDougall's] background [he has less than an eighth grade education] he certainly can't be considered for any other viable employment other than heavy laboring tasks. I talked to him about the possibility of superintendent work or foreman work, but in his line of work it still would not exclude the possibility of climbing stairs, ladders, etc.
 
 
 52
 Dr. Hubbard's chart note dated March 30, 1982 indicates:
 
 
 53
 [McDougall] states that everybody has indicated that he could do sedentary or bench work.
 
 
 54
 Certainly from a practical standpoint it is my own opinion that he will never return to work since he has a low degree of education, little job experience out of what he was previously in and apparently, according to his vocational counselor is not retrainable and for practical purposes, not employable.
 
 
 55
 Third, INA's reliance on the Seattle report is misplaced because, even if it shows that the two injuries created a greater disability than the back injury alone, that is not sufficient to justify section 908(f) relief. See FMC, 886 F.2d at 1186-87.
 
 
 56
 The remaining medical reports do not demonstrate that the second injury alone did not cause McDougall's permanent total disability. McDougall injured his hand in a car accident January 1978. The medical reports from 1978 indicate that McDougall had considerable pain from the hand injury. The ALJ found that he did not work for 18 months as a result of the hand injury but had returned to work a few months prior to the back injury. The only references to the status of McDougall's hand injury after 1978 are in the November 1981 report from the Seattle panel:
 
 
 57
 [McDougall] was in a car accident about four years ago. This resulted in some problems in the left wrist which required some surgery with some residual discomfort. He was off work for about 18 months at that time.
 
 
 58
 ....
 
 
 59
 He is right handed, and he does have some discomfort in the wrists especially if he puts weight on his outstretched hand.
 
 
 60
 ....
 
 
 61
 He is right handed. His upper extremities are essentially negative. He has a medial scar along the fifth metacarpal [where the injury was] but good function of the wrist.
 
 
 62
 The only medical report in the record assessing McDougall's hand injury after 1978 does not indicate that his hand injury contributed to his permanent total disability. INA must demonstrate that the second injury alone did not cause McDougall's permanent total disability. See FMC, 886 F.2d at 1187. Because INA did not establish that fact with evidence other than the stipulations, we affirm the Board's conclusion that INA is not entitled to section 908(f) relief.
 
 
 63
 INA contends that the ALJ erred when he refused on remand to consider INA's additional evidence on the applicability of section 908(f). INA made an offer of proof to the ALJ consisting of testimony of a vocational counselor that McDougall was only partially disabled due to his back injury and that he would be able to compete for jobs except for the problem with his hand. Director objected to INA's additional evidence on the ground that it was beyond the scope of the Board's remand order since the case was remanded solely to determine entitlement to medical benefits.
 
 
 64
 Although INA appealed the ALJ's decision on remand to the Board, INA failed to oppose Director's motion for summary affirmance. Thus, the Board did not directly rule on the ALJ's refusal to take additional evidence, and that circumstance may now prevent us from reviewing INA's contention. See Duncanson-Harrelson Co. v. Director, OWCP, 644 F.2d 827, 832 (9th Cir.1981) (absent exceptional circumstances a reviewing court will not consider issues not presented in an administrative proceeding at the appropriate time).
 
 
 65
 We need not decide, however, whether the issue was properly preserved, because we conclude that the ALJ did not err by refusing the offer of proof. The ALJ properly restricted the scope of the remand proceedings to the terms of the Board's remand order. See 20 C.F.R. § 802.405 (1984) ("Where a case is remanded such additional proceedings shall be initiated and such other action shall be taken as is directed by the Board.") The proper method to present additional evidence on an issue of fact would have been for INA to file a petition for modification pursuant to 33 U.S.C. § 922.
 
 III.
 
 66
 INA argues that McDougall is not entitled to attorney's fees and costs pursuant to 33 U.S.C. § 928(b) because only the source of his benefits was at issue, not the amount of his compensation. The Board rejected that argument, holding that INA was liable for fees because, "by virtue of the modification proceedings, claimant successfully obtained an inchoate right to additional compensation equivalent to the amount of the Section 3(e) credit awarded to employer."
 
 
 67
 The purpose of section 928 is to authorize attorney's fees against employers when the existence or extent of liability is controverted and the claimant succeeds in establishing liability or obtaining increased compensation. National Steel & Ship-building Co. v. United States Dep't of Labor, 606 F.2d 875, 882 (9th Cir.1979). The award of fees here serves that purpose. The extent of INA's liability was controverted ever since McDougall sought a modification on the basis of the state's reimbursement order. McDougall succeeded in the administrative proceedings in establishing INA's further liability. Accordingly, we affirm the award of fees and costs imposed by the Board.CONCLUSION
 
 
 68
 We agree with the Board that INA is not entitled to a section 903(e) offset credit because the LHWCA does not prohibit a state from excluding from its coverage injuries that are covered under federal workers' compensation law. We modify the reimbursement scheme to require INA to pay McDougall an amount equal to the state payments and require McDougall to pay that amount to the state. We affirm the Board's conclusion that INA is not entitled to special fund relief under section 908(f). Finally, we affirm the award of attorney's fees and costs.
 
 
 69
 AFFIRMED as MODIFIED.
 
 
 
 [1]
 As a threshold argument, INA contends that the ALJ improperly granted modification because the mistake of fact as to the source of payments was not material. We reject that contention. A modification is proper when based on a change in conditions or a mistake in the determination of fact. 33 U.S.C. § 922. The ALJ has broad discretion under section 922 to "correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted." O'Keeffe v. Aerojet-General Shipyards, Inc., 404 U.S. 254, 256, 92 S.Ct. 405, 407, 30 L.Ed.2d 424 (1971); see Eifler v. OWCP, 926 F.2d 663, 665-66 (7th Cir.1991). Section 922 does not require that a mistake of fact be "material." We conclude that there was a sufficient ground for modification under section 922 on the basis of mistake in fact and accordingly we may review the Board's section 903(e) decision on the merits
 
 
 [2]
 Director also argues for the first time on appeal that there has not yet been a "final determination" of federal benefits as required by section 51.12.100. Because Director did not make that argument before the Board, we do not address it for the first time on appeal. See Marathon Oil Co. v. United States, 807 F.2d 759, 767-68 (9th Cir.1986) (absent exceptional circumstances, a reviewing court will not consider contentions not raised before the administrative agency at the appropriate time), cert. denied, 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987); Duncanson-Harrelson Co. v. Director, OWCP, 644 F.2d 827, 831-32 (9th Cir.1981) (same)
 
 
 [3]
 The Board noted that the state since 1911 has excluded coverage for workers covered under federal maritime laws. Subsection 51.12.100(4) was added in 1975 to require that a worker repay state benefits if recovery is subsequently made under federal law. The state thereby sought to protect the state's industrial insurance fund when a worker is adequately covered under the LHWCA. Rhodes v. Department of Labor & Indus., 103 Wash.2d 895, 700 P.2d 729, 731 (1985). Section 903(e) was added to the LHWCA in 1984. We presume that Congress was knowledgeable about existing law pertinent to the legislation it enacts. See Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 184-85, 108 S.Ct. 1704, 1711-12, 100 L.Ed.2d 158 (1988)
 
 
 [4]
 Under the original scheme as enacted in 1927, federal compensation applied only "if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by state law." Davis v. Department of Labor, 317 U.S. 249, 252-53, 63 S.Ct. 225, 227, 87 L.Ed. 246 (1942). A great deal of uncertainty developed and employees were required to make a jurisdictional guess as to which of two mutually exclusive compensation schemes applied. In Davis, the Court established concurrent jurisdiction within the "twilight zone," where LHWCA coverage was available and where the availability of state law was difficult to determine. Id. at 256-58, 63 S.Ct. at 229-30. In Calbeck v. Travelers Ins. Co., 370 U.S. 114, 126-27, 82 S.Ct. 1196, 1203, 8 L.Ed.2d 368 (1962), the Court construed the phrase "if recovery ... may not validly be provided by State law," to ensure that a compensation remedy existed for all injuries sustained on navigable waters and to avoid uncertainty as to the source of payments. The Court also held that acceptance of state payments did not constitute an election of a remedy under state law that precluded recovery under LHWCA recovery. Id. at 131, 82 S.Ct. at 1205
 
 
 [5]
 Alternatively, INA asserts that preemption is not necessary because we can allow it an offset credit and order McDougall to repay the state. We reject that contention. If we order McDougall to repay the state, section 903(e) would not apply because there would be no prior workers' compensation payments for the same injury. Moreover, INA acknowledges that its assertion would lead to a "harsh result" because McDougall would be undercompensated by $69,793.03. The LHWCA "must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results." Perini, 459 U.S. at 315-16, 103 S.Ct. at 646 (internal quotations omitted). McDougall's acceptance of the state payments did not constitute an election of a state law remedy that precludes LHWCA recovery. See Calbeck, 370 U.S. at 131, 82 S.Ct. at 1205. INA's argument is contradictory because INA does not dispute McDougall's eligibility for LHWCA coverage and does not contest the state's right to terminate state benefits when it learned that McDougall was covered by the LHWCA
 
 
 [6]
 INA argues that the Board did not have jurisdiction to consider Director's appeal from the ALJ's decision filed on September 27, 1984, because the notice of appeal was not timely. A notice of appeal to the Board must be filed within 30 days from the date the order was filed. 20 C.F.R. § 802.205(a) (1984). The notice of appeal was received by the Board on October 30, 1984
 In denying INA's motion to dismiss for lack of jurisdiction, the Board accepted the certificate of service date of 10/26/84 that appeared on Director's notice of appeal as prima facie evidence of the date of mailing. See 20 C.F.R. § 802.206(b) (1984) (providing that, if fixing the date of delivery as the date of filing would result in a loss of appeal rights, it will be considered to have been filed as of the date of the mailing and that a certificate of service may be used to establish the mailing date) (now 20 C.F.R. § 802.207(b)).
 INA argues that the certificate of service does not state whether the notice of appeal was mailed to the Board and, if it was mailed, it does not indicate the date of the mailing. Although proof of service of the notice of appeal on the deputy commissioner and other parties must be included with the notice of appeal, 20 C.F.R. § 802.204 (1984), there is no requirement that proof of service on the Board must be included with the notice of appeal. We conclude that the Board did not err in finding that the notice of appeal as to the section 908(f) claim was timely.